## BONWIT TELLER & CO. v. UNITED STATES.

### No. H–554.

Court of Claims.

April 14, 1930.

LITTLETON and GRAHAM, Judges, dissenting.

Arthur B. Hyman, of New York City, for plaintiff.

George H. Foster, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (Frank J. Ready, Jr., of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, LITTLETON, and GRAHAM, Judges.

GREEN, Judge.

The plaintiff brings this suit to recover the amount of a refund alleged to be due from defendant on taxes paid by plaintiff for the fiscal year 1919. The defendant alleges that no claim for refund was filed until after the expiration of the period of limitations, and by way of counterclaim also alleges that part of the amount claimed by plaintiff was wrongfully paid to it and defendant therefore is entitled to judgment for the amount so paid.

The evidence shows without dispute that plaintiff made its return for the year 1919 and paid taxes accordingly, but the Commissioner assessed $167,294.59 in addition thereto. The plaintiff filed a claim for abatement of the amount of this additional assessment, which was allowed, and in recomputing the tax the Commissioner found that the plaintiff had been overassessed $10,866.43. The plaintiff was notified of this overassessment about November 19, 1924, and at the same time was advised that, "inasmuch as the provisions of section 281 of the revenue act of 1924 have not been complied with regard to the full amount of the above overassessment, a portion in the amount of $10,866.43 cannot be allowed."

Later, the section above referred to having been amended, the Commissioner, on May 16, 1925, wrote plaintiff that "an examination of your income-tax return for the year ended January 31st, 1919, discloses an apparent overassessment of tax for the year. It appears that the overassessment cannot now be allowed, due to the limitation of time for allowance thereof, provided by section 281 of the revenue act of 1924, unless an income and profits tax waiver is filed on or before June 15th, 1925, as provided by an act of Congress dated March 3, 1925, amending section 281 E of the revenue act of 1924. Two waiver forms are therefore enclosed in order that you may, if you desire, execute and return one of the forms to this office."

In response to this letter, the plaintiff, on May 23, 1925, mailed to the Commissioner a waiver which was duly accepted by the Commissioner. Nothing further was done until December 11, 1926, when plaintiff's counsel wrote a letter to the Commissioner calling attention to the proceedings which have been above recited and the letters to which reference has been made, stating, in substance, that it was the custom in such cases to make immediate refund, and that in the letter of the Commissioner there was no suggestion that anything further was necessary than the filing of the waiver, and concluding with a statement to the effect that it would be expected the taxpayer would receive that to which it was entitled. On February 9, 1927, a letter was written by the Commissioner to counsel for plaintiff requesting that a claim be filed on the form inclosed in order that the overassessment might be allowed and in response thereto a claim for refund of $10,866.43 was filed with the Bureau about February 19, 1927. Prior to the filing of this claim for refund, about February 5, 1927, the head of the consolidated returns audit division of the Income Tax Unit approved and recommended for allowance a certificate of overassessment and overpayment of $10,866.43 under the plaintiff's original income tax return for the fiscal year ending January 31, 1919. The record of the case was thereupon checked in the claims control section of the clearing division to determine whether the plaintiff had filed a claim for refund prior to the expiration of the period of limitation applicable thereto, and it was determined with the approval of Mr. W. T. Sherwood, the head of the clearing division, that the documents on file, which included those to which reference has been made hereinabove, would be treated by the Bureau as an informal claim for refund filed

May 23, 1925. Notations were made on the Bureau's record copy of the proposed certificate of overassessment to the effect that an informal claim for refund had been filed May 23, 1925, with waiver perfected by claim Form 843. This bore the signature "O. Allen," with this further notation as follows: "This C. of O. approved for scheduling as is by W. T. S. (Signed) O. Allen." After these proceedings, the Commissioner of Internal Revenue allowed plaintiff's claim of refund, and approved and scheduled to the collector of internal revenue a certificate of overassessment in plaintiff's favor. Thereafter the Commissioner credited $9,846.06 of the amount allowed on the schedule on taxes due for 1917 and sent plaintiff a check for $1,462.99, which included the balance of the overassessment and interest thereon. This check has never been presented by plaintiff, and, as the taxes upon which the credit was made were at the time barred by the statute of limitations, the action of the Commissioner in making this credit makes no defense herein.

We have set out these facts at length because it is necessary to consider them in determining two issues presented in the case which are:

First, whether the determination of the Commissioner that a claim for refund had been filed is final and conclusive.

Second, if the decision of the Commissioner is not conclusive, whether an informal claim for refund was in fact filed and made sufficient by the formal claim treated as an amendment thereto.

The plaintiff contends that the decision of the Commissioner that an informal claim for refund had been filed and perfected by the one later filed in regular form was final and conclusive. We think it was no more final and conclusive than if he had made a decision that no claim for refund had been filed and for that reason rejected the claim for refund. The decision of the Commissioner on such a matter was not a mere administrative act, and, even if it had been, it could be impeached for fraud or mistake. We think it is reviewable in this court on the question of whether it was erroneous under the law, and therefore is not conclusive.

The plaintiff contends that the court does not have all the facts before it upon which the Commissioner acted, but the findings show what was considered by a clerk in the office in coming to the conclusion that an informal claim for refund had been filed, and that the decision of this clerk was sub-

sequently approved by the Deputy Commissioner. We cannot assume that there were any other matters which were taken into consideration. If the plaintiff or its attorney had presented to the Commissioner anything further than appears in the findings in the way of making a claim, formal or informal, for this refund, obviously the plaintiff would have it in its power to produce evidence thereof. As it has produced no such evidence, although such evidence would be in its favor if produced, the court under well-settled principles has the right to conclude that no such evidence exists.

■ The record in the case shows that the Commissioner and his officials took unusual pains to advise the plaintiff of its rights and gave it both notice and opportunity in abundant time to avail itself of them. The refund now sought is of taxes paid in December, 1919, and as the law then stood a claim for refund had to be filed by December, 1923. No claim was filed, and in April, 1924, an additional assessment for the year 1919 was made by the Commissioner. A claim for abatement of this additional assessment was filed by the taxpayer in May, 1924, but no claim was then made that the amount originally paid was too large. The Commissioner, however, in November, 1924, found that the plaintiff had been overassessed for 1919 in the sum of $10,866.43. Plaintiff was advised of this overassessment, but also notified that it could not be allowed, as the time for filing a claim had expired. Doubtless with the intention of giving plaintiff and other taxpayers in a similar situation further opportunity to file claims for refund, on March 3, 1925, Congress passed an amendment to the revenue law (26 USCA § 1065 note) relating especially to the taxes of 1919, providing in effect that, if the taxpayer should before June 15, 1925, file a waiver in respect to such taxes, a claim for refund thereof might be filed on or before April 1, 1926, thus making a special exception in favor of taxpayers who had failed to file a claim for refund on taxes of 1919 within the time required by law. The plaintiff having taken no action under this provision of the statute for more than two months, the Bureau wrote a letter to plaintiff calling attention to the statute and stating it would be necessary that a waiver be filed, and inclosing a form of waiver. The plaintiff thereupon executed a waiver and filed it with the Department, but still did nothing in the way of filing a claim. In fact it was not until December 11, 1926, that the Bureau heard from plaintiff again, when its counsel wrote a letter reviewing the correspondence that had passed between the Bureau and the plaintiff and stating in effect that it was assumed that the amount of the overassessment would be refunded. This, it will be observed, was over eight months after the limitation had expired for filing claims under the amended statute. It is upon this record that the Bureau finally held that an informal claim of refund had been filed on May 23, 1925, when the waiver was filed. In other words, the Bureau held that the filing of the waiver constituted an informal claim for refund under the circumstances, but there was nothing in the circumstances to justify any such conclusion. It was simply a case where the plain provisions of the statute were utterly ignored by the plaintiff.

■ Upon the question as to whether a claim for refund, informal or otherwise, was filed by the plaintiff within the period of limitations, the facts in the case leave no doubt. Absolutely nothing in the way of a claim for refund was filed by plaintiff until February 19, 1927, about eight months after a claim for refund was barred by the statute of limitations. It may possibly be said that the plaintiff was misled by the letter from the Commissioner stating that the claim could not be allowed unless a waiver was filed, and that, when the waiver was accordingly filed, the plaintiff had the right to believe that the claim would be paid without any further action being taken on its part. But there is no claim that defendant's officials waived the filing of a claim for refund, and plaintiff's attorney could hardly have been misled to the detriment of plaintiff by this letter. If the statute of limitations had run a short time after the writing of the letter, it possibly might be said that plaintiff had been prejudiced by it. But the period of limitations did not expire until about ten months after the receipt of this letter and after a reasonable time had expired the failure of the Department to take any action on the refund was practically notice to the plaintiff that the Commissioner did not intend to allow it under the situation in which it then stood. The plaintiff, instead of taking up the matter again in a short time with the Commissioner, delayed until after the statute of limitations had run, and then counsel for plaintiff wrote the Commissioner a letter in effect stating that it assumed that payment would be made without any further action on plaintiff's part. This, it seems to us, was an inattention to the matter for which no justification can be found in the letters from the Commissioner's office, and, if the letter of plaintiff's counsel indicating expectation that

the refund would be paid constituted an informal claim for refund, we find it was sent after the period of limitations had expired.

It is urged that the claim for refund which was filed long after the statute of limitations had expired may be considered as an amendment perfecting plaintiff's claim. Whether this claim for refund, which was complete in itself and made no reference to any other instrument, could in any event be considered an amendment, we are not called upon to determine. In any event, it cannot be considered an amendment to something which did not exist, and the plaintiff, up to the time the limitation had expired, had made no kind of a claim and filed no statement which could possibly be construed as a claim for refund, either formal or informal, in the sense that the words are used in the statute, or any other. What the plaintiff actually did was to assume that the refund would be paid without the filing of any claim. If there had been any justification for this assumption, it might be that the filing of a refund claim was waived, but the record shows clearly, as we think, that there was none. On the contrary, the failure of the Commissioner to take any action for months after the filing of the waiver we think was sufficient notice to plaintiff that something further was required on its part. It ought also be said in this connection that plaintiff does not allege that the filing of a claim for refund was waived, but rests its case upon the theory that neither under the evidence nor the law can the original decision of the Commissioner be reviewed by this court, and that this decision is final and conclusive. For the reasons above stated, we do not think this position is well founded. Having reached this conclusion, we hold that the evidence clearly shows that the Commissioner erred in deciding that an informal claim for refund had been filed when in fact no claim for refund of any kind was filed until after the expiration of the period of limitations.

It has been held in a number of cases, and so far with the approval of the Supreme Court, that, even where a claim for refund is filed, it must state the grounds of the claim. In most of these cases, like the one at bar, the evidence showed that the plaintiff would have been entitled to the refund had it complied with the provision of the statute with reference to filing the claim which this court considered binding upon it. If we sustain the claim of plaintiff, then, as it seems to us, we disregard the plain provisions of the statute and put the rights of a taxpayer

which has filed no claim at all on a higher basis than those of one which has filed a claim but through mistake of law or some other error has failed to put it in proper form. We do not think the Commissioner can properly hold that letters or papers which make no mention of a claim for refund and use no language which can be construed as making such a claim constitute in fact an informal claim. Such a construction would practically nullify the statute.

The defendant, as before stated, sets up a counterclaim and seeks to recover the amount of the payment made by the Commissioner on the plaintiff's claim for refund. In support of the counterclaim it is urged that the Commissioner had no authority to make this payment, as no claim for refund was filed until after the expiration of the period of limitations and the payment was not made until still later. We do not find it necessary to determine whether the Commissioner had authority to pay the refund or any part of it after the statute of limitations had run. The existence of plaintiff's claim did not depend upon the filing of a claim for refund. The claim arose from the fact that plaintiff had overpaid its tax. The statutory requirement that a claim for refund should be filed and also the limitations on the time when suit might be brought are simply conditions required by the sovereign government to exist before suit could be begun on the claim, and have nothing to do with the validity of the claim. Nor did the validity of plaintiff's claim at all depend on the authority of the Commissioner to make the payment. All of these matters are merely statutory provisions, which at most only pertain to the right of the plaintiff to bring suit, and which Congress could repeal or change at any time, and thereby without in any way affecting the nature of the claim itself enable plaintiff to recover by suit the balance of the overpayment. The situation is analogous to a case where a person holding a claim which is valid but barred by the statute of limitations receives payment from the party against whom the claim is held. The statute barred the remedy but did not extinguish the liability. Plaintiff received this payment on a claim which had not been extinguished, and, having so received it, the amount received became its property. We know of no theory upon which the government can claim that this money is due it. The fact that the plaintiff could not have recovered it by suit, as we have shown, does not defeat its right to keep it, which is founded on a just claim against the government.

The counterclaim therefore cannot be sustained.

It will be observed that a peculiar situation has arisen in the case. We have held that the government was prevented from applying any of the overpayment upon the taxes of previous years by the statute of limitations. We have also held that the amount which the government undertook to so apply could not be recovered by plaintiff by reason of the statutory provisions requiring the filing of a claim for refund within a given time. But, while the court has felt constrained to apply these arbitrary rules of statutory law, the final result is that abstract justice is done, in that the government has received the amount of the taxes due it in all the period involved in the case, and the plaintiff has paid no more than it justly owed, and is permitted to retain the balance of its overpayment after these taxes have been settled. While the court is not influenced in the least by this result in coming to its decision, it can view the outcome with entire equanimity.

The petition and counterclaim must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WILLIAMS, Judge, concur.

LITTLETON, Judge (dissenting).

I think the plaintiff should recover. If it made an informal claim, the Commissioner had a right to make the refund. The Commissioner held that an informal claim had been made on May 23, 1925, and allowed the refund of $10,866.43, which was an overpayment found to have been made on the original return, and at no time did he ever change his decision.

It appears from the exhibits filed that the plaintiff made a return for the fiscal year ending January 31, 1919, showing a tax of $57,871.16, which was duly paid. On the April, 1924, special list, the Commissioner made a jeopardy assessment of an additional tax of $167,294.59 for the fiscal year 1919. Plaintiff filed a claim for abatement. This claim is not in evidence. Thereafter an internal revenue agent made an investigation and an examination of the plaintiff's records and on May 31, 1924, made a report to the Commissioner of the result of his examination with reference to plaintiff's tax liability for the fiscal year 1919. As a result of the report of the revenue agent, which was made the basis of the Commissioner's final determination, the Commissioner finally determined that the correct amount of the total tax due for the fiscal year 1919 was $47,-004.73; resulting in a total overassessment of $178,161.02, which overassessment was made up of $10,866.43 of the tax reported and paid on the original return and the total of the jeopardy assessment of $167,294.-59 which had not been paid. On November 19, 1924, the Commissioner mailed plaintiff a notice of this determination and advised it that the total of the additional jeopardy assessment would be abated, but that, inasmuch as no claim for refund had been filed within the time required by section 281 of the Revenue Act of 1924 (26 USCA § 1065 note) the overassessment of $10,866.43 could not be refunded or an overassessment allowed in respect thereon. In accordance with this determination, the Commissioner, on or about November 19, 1924, prepared a certificate of overassessment and approved a schedule of overassessment of $167,294.59, being the total overassessment of $178,161.-02, less $10,866.43, which at that time was not refundable.

Subsequently Congress passed the Act of March 3, 1925 (26 USCA § 1065, note), amending section 281(e) of the Revenue Act of 1924. This amendatory act provided that, "if the taxpayer has, on or before June 15, 1925, filed * * * a waiver in respect of the taxes due for the taxable year 1919, * * * credit or refund relating to the taxes for the taxable year 1919 shall be allowed or made if claim therefor is filed * * * on or before April 1, 1926. * * *" Thereupon the Commissioner, on May 16, 1925, sent to the plaintiff a notice on a form prepared for that purpose in which he referred to his determination of an overassessment for 1919, and stated: "It appears that the overassessment cannot now be allowed due to the limitation of time for allowance thereof provided by section 281 of the revenue act of 1924, *unless an income and profits tax waiver is filed on or before June 15, 1925,* as provided by an act of Congress dated March 3, 1925, amending section 281 (e) of the revenue act of 1924." With this notice the Commissioner sent the plaintiff two waivers, and suggested that one of them be executed and returned. The waiver was executed by plaintiff on May 22, 1925, and its counsel returned the same to the Commissioner with a letter stating: "In accordance with your request, we inclose herewith waiver." This letter and the waiver were received and filed by the Bureau of Internal Revenue on May 23, 1925. The Bureau of Internal Revenue indorsed upon the letter

of plaintiff's counsel returning the waiver as follows: "Inferential demand for the refund upon basis of schedule sent taxpayer under date of November 19, 1924 (IT: CR: A: JML). Rules and Regulations. Mulligan." A further indorsement appears on this letter as follows: "Approved by Mr. Mulligan and Mr. Sherwood for scheduling as is. O. Allen. 4/4/27." On February 5, 1927, the Bureau executed another certificate of overassessment for $10,866.43, and the certifications set forth in finding 10 were made on the Bureau's copy thereof, and the correspondence set forth in the findings of fact took place. On March 8, 1927, a schedule of overassessment for the $10,866.43 was signed by the Commissioner and transmitted to the collector at New York. The collector made his report to the Commissioner, and thereafter the Commissioner sent plaintiff the certificate of overassessment for the $10,-866.43, showing that $9,846.06 thereof had been credited against a 1917 tax and the balance of $1,020.37 refunded, together with $442.62 interest. The Bureau wrote on this certificate the following: "Waiver filed May 23, 1925. Refund claim filed May 23, 1925."

On June 3, 1927, counsel for plaintiff wrote the Commissioner a letter with reference to the overpayment of $10,866.43 calling his attention to the fact that the tax for 1917 against which $9,846.06 of the overpayment had been credited was barred by the statute of limitation at the time the credit was made, and that the entire amount should be refunded, and asking that this be done. On October 26, 1927, the Commissioner replied, and, after conceding that the credit against the 1917 tax was made after the expiration of the statutory period of limitation within which the 1917 tax could be collected, and after referring to the decision of the Supreme Court in Bowers v. New York & Albany Lighterage Company, 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, stated: "You are advised that the question of the proper action to be taken in cases where an overassessment for one year has been credited against an additional tax for another year after the expiration of the statutory period of limitation on the collection of tax for such year is now under consideration by the general counsel of the bureau in connection with the position taken by the Government in the case of the Peerless Paper Box Company v. Routzahn [(D. C.) 22 F.(2d) 459]. * * * As soon as a decision is reached on this question you will be further advised." No further advice was given plaintiff, and it instituted this suit to recover

the portion of the overpayment allowed which had been credited against an outlawed 1917 tax. The petition was filed January 7, 1928, and a general traverse was entered February 4, 1928. The case was referred to a commissioner for hearing and report. The hearing was held before the commissioner who filed his report April 4, 1929. Plaintiff filed its brief May 18, 1929. Thereafter, on May 24, 1929, the defendant filed a counterclaim insisting, for the first time, that no claim had been made in time, and asking for the recovery of that portion of the overpayment and interest for 1919 that had been refunded.

In view of all the facts and circumstances, I am of opinion that the Commissioner of Internal Revenue was justified in holding that the execution and filing of the waiver with the letter dated May 22, which waiver and letter were received and filed by the Bureau on May 23, 1925, constituted an informal claim for refund made in time, which informal claim was perfected by a formal claim later filed. This view does not give the taxpayer, who has made an informal claim, and who perfects such claim by the filing of a formal one, any greater right than a taxpayer who has filed a claim on the form prescribed by the Commissioner's regulations which fails to state the grounds for the claim. The general rule is that an informal claim may be perfected by a formal claim and that a claim filed on the proper form, but which does not state the grounds for the refund, may also be perfected by an amendment specifically setting forth the grounds or that this defect may be waived by the Commissioner. For these reasons I think the counterclaim should be denied and that judgment should be given for the plaintiff.

The situation here is different from the ordinary case involving the sufficiency of the grounds of a claim, such as was before the court in Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253, or where the plaintiff has taken no steps whatever toward obtaining a refund, as was the case in Kings County Savings Institution v. Blair, 116 U. S. 200, 6 S. Ct. 353, 29 L. Ed. 657. The allowance of the refund by the Commissioner is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake, and the fact of fraud or mistake must be clearly established by competent evidence. United States v. Kaufman, 96 U. S. 567, 24 L. Ed. 792; United States v. Savings Bank, 104 U. S. 728, 26 L. Ed. 908. There is here no question of

fraud. The burden is upon the government to establish that the Commissioner of Internal Revenue made a mistake when he held that an informal claim had been made. In my opinion the record does not sustain this claim of the defendant. The statute does not specify the form or contents of a claim for refund upon which the Commissioner may act. He has considerable discretion in the matter. The purpose of requiring the claim is either definitely to end the controversy if none is filed or to keep the matter of the tax liability alive by the filing and to give the Commissioner the right to pay the amounts erroneously collected. The decision of the Commissioner as to the sufficiency of the claim under the peculiar circumstances existing in the particular case should be given considerable weight. In cases such as this, any documents filed by the taxpayer in an effort and for the purpose of obtaining a refund, and which satisfy the Commissioner that the taxpayer is asking for a refund of an admitted overpayment, are sufficient under the statute to constitute an informal claim that might be perfected as this claim was.

GRAHAM, Judge, concurs.