LEISENRING et al. v. UNITED STATES.
No. L–221.

Court of Claims.
June 5, 1933.

Spencer Gordon and Marion P. Wormhoudt, both of Washington, D. C. (Covington, Burling & Rublee, of Washington, D. C., on the brief), for plaintiff.

John A. Rees and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiffs are executors of the estate of Daniel B. Wentz, deceased, who died February 8, 1926.

This suit is brought upon what the plaintiffs claim to be an account stated for $34,814.04 due the deceased. The evidence shows that the Commissioner, on May 15, 1924, signed a schedule of refunds and credits which showed an overpayment of $77,338.94 on the taxes of the deceased for 1919, of which $34,814.04 was credited in the same schedule against that amount of an additional assessment for 1917. The additional tax for 1917 had been assessed in time, but collection was barred by the statute of limitation of five years provided in section 250 of the Revenue Act of 1921 (42 Stat. 264) at the time collection was made by the credit. In accordance with this schedule of refunds and credits, a certificate of overassessment was later prepared by the Commissioner showing that the testator's tax for 1919 had been overassessed in the amount of $77,338.94, and that "the report of the internal-revenue agent in charge, dated October 17, 1923, had been approved by this office as to the adjustment for this year." The certificate further went on to state, "The amount of the overassessment will be abated, credited, or refunded, as indicated below," and also, "If an overpayment has been made and other taxes are due, credit will be made accordingly, and any amount refundable is covered by Treasury check transmitted herewith." Notations on the certificate made "below" showed that, of the overassessment, $34,814.04 had been credited on additional taxes for the year 1917 and that $42,524.90 was refunded. This certificate, together with a Treasury check for the amount of the refund of $42,524.90, was delivered to the testator about June 15, 1924. After the death of Daniel B. Wentz and on May 13, 1930, the executors of his estate made application to the Commissioner of Internal Revenue for interest on the overpayment for the year 1919 and for a refund of $34,814.04 of the 1919 overpayment which

had been credited against taxes of 1917. In this claim they set out a copy of the certificate of overassessment for 1919 and alleged that the interest was due thereon and that the credit above referred to was void, not having been made within the statutory period applicable thereto. This claim was denied. The petition was filed and the suit begun June 10, 1930.

This case, like many others, turns on the question of whether the suit was brought in time, and the parties agree that, unless the suit can be based on an "account stated," the period of limitations for its commencement has expired. It is contended on behalf of the plaintiffs that the certificate of overassessment referred to above constituted an account stated in favor of the taxpayer for $34,814.04, and that consequently the plaintiffs had six years from the time it was delivered to the taxpayer in which to bring suit, and that, the suit having been instituted June 10, 1930, it was begun in time. The defendant contends that the acts of the Commissioner, including the delivery of the certificate of overassessment, did not constitute an account stated in showing anything due the taxpayer, and that, if there was any account stated through the certificate of overassessment, it showed that nothing was due the taxpayer after receipt of the refund allowed therein. It is also insisted on behalf of the defendant that interest on the amount claimed cannot in any event be recovered, but, as we view the case, it will not be necessary to consider the point thus raised.

A number of transactions between the deceased and the Commissioner with reference to the taxes in suit and other taxes are shown by the findings of fact in addition to what we have set out above in the opinion, but we do not think it is necessary to refer to them as, in our opinion, they do not affect the determination of the case.

■ In our view, the decision herein is controlled by the case of David Daube v. United States, 59 F.(2d) 842, 846, 75 Ct. Cl. 633, and the opinion of the Supreme Court affirming the decision of this court in David Daube v. United States, 53 S. Ct. 597, 599, 77 L. Ed. ——, decided May 8, 1933. In the opinion rendered by this court in the Daube Case, supra, it is stated that there are certain well-settled principles from which no court has ever varied which apply to an account stated. Among them is the rule that the parties must agree upon the balance struck, that there must be a promise, express or implied, for the payment of such

balance, and that, where there are mutual or cross demands, the parties must come to an agreement as to the allowance or disallowance of the items composing the account, but especially "there must be an adjustment, a balance struck, and an assent to the correctness of the balance"; further, that "the parties can not state an account by agreeing to part of the items, and leaving the others open for future adjustment or litigation," and that "the test of an account stated is that the minds of the parties met as to the amount due." Nor does it make any difference that a claim made in the account may be groundless, although if any part of the claim is disputed so that the balance stated is not admitted it does not become an "account stated." This last is particularly applicable to the case now before us for the reason that the defendant in the account charged the taxpayer with a credit on the taxes of 1917, although the time had expired within which they could legally be collected. In the same case we also said: "The admission of one item in the account of the transactions between the parties offset by another item will not support an action on an account stated as to the item admitted, although it may constitute evidence of the correctness thereof in an action otherwise commenced." The authorities supporting these rules are too numerous for citation.

Applying these principles to the certificate of overassessment which was delivered to the taxpayer and the schedule of refunds and credits which evidently in some way came to the knowledge of the executors, we are clear that there was no account stated to which both parties gave assent. The sheet entitled "Certificate of Overassessment" did indeed show the overassessment, but this was only one item of the account which was also shown by the same paper. The document showed that in defendant's statement of the account the item of $34,814.04 was credited upon the testator's taxes for 1917 and that the balance due the taxpayer was $42,524.90, which was accordingly refunded to him by check. This amount was the balance struck in the account as stated by the Commissioner, but the evidence shows that the taxpayer did not agree to this balance, and that the defendant did not agree that $34,814.04 was due the taxpayer. Consequently there was no "account stated." See Ellis P. Earle v. United States, 3 F. Supp. 849, this day decided by this court.

We find nothing in the decision of the Supreme Court affirming the Daube Case, supra, which is in conflict with what we have set out above. On the contrary, we think that the opinion therein shows that the Supreme Court had no intention by the decision in the case of Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018, to overturn principles which have been agreed upon by all the courts of this country and remained settled for nearly a century, as seems to be contended on behalf of plaintiffs. In the Daube Case, supra, the Supreme Court cited with approval the case of Newburger-Morris Co. v. Talcott, 219 N. Y. 505, 512, 114 N. E. 846, 848, 3 A. L. R. 287, in which the Court of Appeals said:

"But the very meaning of an account stated is that the parties have come together and agreed upon the balance of indebtedness, in simul computassent, so that an action to recover the balance as upon an implied promise of payment may thenceforth be maintained."

In the next to the last paragraph of the opinion in the Daube Case the Supreme Court stated in substance that the decision in the Bonwit Teller Case, supra, was limited in its application to cases where the evidence is such that it "sustains the inference of an agreement that the tax shall be repaid." In this case, instead of sustaining any such inference, the evidence clearly shows the contrary. Previous to the issuance of the certificate of overassessment upon which suit is brought the taxpayer had filed claims for credit of the 1918 overpayment against the 1917 additional tax. Instead of making this credit, the certificate upon which plaintiffs now rely was issued showing an overassessment for the year 1919 in the amount of $77,338.94, and a balance was struck therein between the taxpayer and defendant by crediting $34,814.04, the amount for which suit is now brought, upon additional taxes for the year 1917 and refunding to the taxpayer by check $42,524.90. The check and the certificate of overassessment were issued June 13, 1924, and delivered to Daniel B. Wentz about June 15th of the same year. The petition herein was filed a few days before the expiration of six years from the time the certificate was delivered. Daniel B. Wentz, so far as the record shows, accepted the check which had been sent him without making any protest or objection thereto, but nearly six years afterwards the executors of the estate filed a claim for interest on the overpayments allowed for 1918 and 1919 and for the refund of the $34,814.04 of the 1919 overpayment credited against the 1917 tax. If any inference at all could be drawn from these facts, it would be that Daniel B. Wentz agreed to the balance struck by the govern-

ment, but we are inclined to think that the mere fact that he accepted the check does not show that he agreed that the balance struck by the government was correct. The certificate of overassessment showed clearly how the government computed the amount due the taxpayer, and the remission of the check to him for that amount was in effect a statement that $42,524.90 was the amount due him and payment was being made thereof. We are at a loss to understand how it can be argued from this state of facts that the government agreed that $34,814.04 more was due the taxpayer.

It is contended on behalf of the plaintiffs that the facts established in Bonwit Teller & Co., supra, make the same kind of a case as that which is now before this court. There may be much similarity between the actual facts in the two cases, but there is a great difference in the facts submitted to the court. When the Bonwit Teller Case was submitted to this court, there was not a line or even a word said in the brief of counsel for either party with reference to an account stated. There was an allegation in the petition to the effect that the Commissioner of Internal Revenue "rendered a statement" to the plaintiff in which statement the amount for which suit was brought "was actually found and agreed to be due" to the plaintiff, and a statement in argument that the action was for the recovery of this amount "upon an allowed claim." Apparently there was no contention over these allegations, but it was contended on behalf of the government that a refund could not be made because the provisions of the statute were not complied with. The Supreme Court therefore had no occasion to consider whether the facts in the case supported an account stated, and we do not think it intended to determine that question. In view of the facts as found in the case now before this court and the language of the Supreme Court in the Daube Case, supra, which we have quoted above, we are clear that the decision in the Bonwit Teller Case, supra, is not controlling in the case at bar.

The case of Parks & Woolson Machine Co. v. United States, 58 F. (2d) 868, 75 Ct. Cl. 204, is also cited in support of plaintiffs' theory but the closing sentence of the opinion therein which reads, "Recovery of the overpayment was barred when the suit was instituted, even if it had been grounded upon an account stated," we think shows that it was not intended to hold that an account stated had been established.

Nor do we find anything in Naumkeag Steam Cotton Co. v. United States, 2 F. Supp. 126, decided by this court January 9, 1933, that conflicts with what we have said above. That case involved a very different state of facts from the one now before the court, and an altogether different issue was raised by the defendant. Consequently nothing was said in the majority opinion which might even remotely refer to an account stated, or to the question of whether the suit was brought in time, which would have involved the discussion of matters not appearing in the case at bar. Having decided the case on the issues presented, obviously it was not necessary for the court to go further and decide some issue that had not been raised.

Our conclusion is that there is no evidence showing or tending to show an agreement, express or implied, to pay this sum to the taxpayer, and we have entered a finding of fact accordingly. As we find in effect and hold that there was no account stated, it follows that plaintiffs' action to recover the amount of the credit is barred. The credit was definitely granted on May 15, 1924, when the Commissioner approved and signed the schedule of refunds and credits. Any cause of action for interest accrued at that date, and is therefore also barred.

It follows from what has been stated above that plaintiffs' petition should be dismissed, and it is so ordered.

WHALEY and WILLIAMS, Judges, concur.

BOOTH, Chief Justice, did not hear this case on account of illness and took no part in its decision.

LITTLETON, Judge (dissenting).

Plaintiffs sue to recover $34,814.04, being the unrefunded balance of the overpayment of $77,338.94 for 1919 allowed by the Commissioner of Internal Revenue on his schedule of refunds signed May 15, 1924. The amount sued for was credited by the Commissioner against an additional assessment for 1917 at a time when the 1917 tax was barred by the statute of limitation. A certificate of overassessment was duly prepared by the Commissioner and delivered to the taxpayer showing his allowance of the overpayment of $77,338.94 for 1919 and the division thereof to the amount refunded and the amount credited. After the receipt of the certificate of overassessment and the Treasury check for the portion of the 1919 overpayment in excess of the amount credited

against the 1917 tax, Wentz died, and the executors of his estate made demand upon the Commissioner for payment of the balance of the 1919 overpayment. The Commissioner in his letter to the executors agreed that the 1917 tax was barred at the time the credit was made but refused to refund the balance of the 1919 overpayment on the ground that the statute of limitation of six years had barred a suit to recover the same. This conclusion of the Commissioner was based on the view that the cause of action for the overpayment for 1919 accrued on May 15, 1924.

Counsel for the defendant contend that plaintiffs' cause of action to recover the unrefunded portion of the 1919 overpayment, amounting to $34,814.04, credited against the barred 1917 tax, accrued May 15, 1924, the date on which the Commissioner signed the schedule of refunds and credits allowing the overpayment of $77,338.94, and that this suit was barred by the statute of limitation of six years at the time it was instituted on June 10, 1930; second, that plaintiffs are not entitled to recover because (a) the petition was not filed within five years after the payment of the tax for 1919, nor within two years after the Commissioner allowed the overpayment, and (b) that the action of the Commissioner in allowing the 1919 overpayment crediting a portion thereof against the 1917 tax, the refunding of the balance, and the issuance and delivery of the certificate of overassessment showing the details thereof, did not give rise to a cause of action, that plaintiffs had "no cause of action in the nature of an account stated," and that the six-year statute of limitation has no application.

It is also contended by the defendant that no interest on the unrefunded portion of the 1919 overpayment of $34,814.04 can be recovered because the cause of action therefor accrued May 15, 1924.

The majority opinion holds that the Commissioner's determination and allowance of the overpayment of $77,338.94 for 1919, the issuance and delivery of the certificate of overassessment, and his refusal to refund $34,814.04 of the overpayment when there was no tax legally collectible for any other taxable year did not give rise to an implied promise to pay the overpayment allowed, and that no cause of action with a new term of limitation arose upon the delivery of the certificate of overassessment; that, inasmuch as the suit was not instituted within five years after the 1919 tax was paid, nor within two years after the date of the Commissioner's allowance of the overpayment, it is barred by the statute of limitation.

With these conclusions I cannot agree. I can see no difference in principle between this case and the case of Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 396, 75 L. Ed. 1018, and I am of opinion that this suit was timely instituted and that plaintiffs are entitled to recover the balance of $34,814.04 of the overpayment allowed for 1919 which was credited against a barred 1917 tax. The dissents in this court in Bonwit Teller & Co. v. United States, 39 F. (2d) 730, 738, 69 Ct. Cl. 638, were based on the view that the allowance of the overpayment of $10,866.43 was not barred at the time it was made because the taxpayer had filed a sufficient claim for refund, and that it was entitled to recover because "the allowance of the refund by the Commissioner is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake." In the Supreme Court the government contended that no claim for refund had been filed, and that the refund of the overpayment was barred at the time it was allowed by the Commissioner; that, even if the allowance was timely, the suit in this court was barred because it was not instituted within five years after the tax was paid nor within two years after the allowance of the overpayment. The Supreme Court, after holding that Bonwit Teller & Co. had filed a sufficient claim for refund of $10,866.43, said: " * * * The Commissioner allowed the claim and on March 8 approved and scheduled to the collector the certificate of overassessment. * * * The collector credited $9,846.06 against the additional tax assessed for the year ending January 31, 1917. May 12, 1927, the Commissioner caused the certificate, showing the deduction made by the collector, to be delivered to plaintiff with a check for the balance of the overassessment and interest, $1,462.99. Plaintiff objected to the application of any part of the refund against such additional assessment on the ground that the 1917 tax was barred and declined to accept the check in full settlement, but offered to apply it in partial payment of the claim." Upon these facts the court said that "the action * * * is grounded upon the determination evidenced by the certificate issued by the Commissioner May 12, 1927. Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought. United States v. Kaufman, 96 U. S. 567, 570, 24 L. Ed. 792; United States v. Savings Bank, 104 U. S. 728, 26 L. Ed. 908; Bank of Green-

castle's, 15 Ct. Cl. 225. There is no merit in the contention that the suit is barred."

In Daube v. United States, 53 S. Ct. 597, 598, 77 L. Ed. ——, decided May 8, 1933, the court, after referring to the Bonwit Teller & Co. Case and the fact that in it a certificate of overassessment had been issued and delivered, said "the statement of an account gives rise to a new cause of action with a new term of limitation." The decision of this court dismissing the petition in the Daube Case was affirmed by the Supreme Court on the ground that no certificate of overassessment was delivered to the taxpayer. I do not think the decision of the Supreme Court in the Daube Case approves everything that was said by this court in that case.

We have held that when the Commissioner signs a schedule of refunds and credits he allows an overpayment, and, when there is an entry thereon showing a tax due for another year, a credit is simultaneously made. Pottstown Iron Co. v. United States, 40 F. (2d) 142, 69 Ct. Cl. 427. But the allowance of the overpayment must occur before the credit can be effective. The certificate of overassessment, which follows the approval of the schedule allowing the overpayment, states the account for the particular taxable year by showing the total amount of the overpayment allowed and division thereof to the amount credited and the amount refunded; therefore, if the amount satisfied by an offset or credit of a portion of the overpayment is not legally due the government, or is barred by the statute of limitation, the taxpayer is entitled to recover the balance of the overpayment allowed and shown on the certificate of overassessment. Each taxable year stands alone, Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, and the allowance of an overpayment and the delivery of a certificate of overassessment for a particular taxable year is a statement of the account for such year, and, if there is no tax legally due the government for another taxable year, the statute raises an implied promise to pay the overpayment allowed by the Commissioner and stated in the certificate of overassessment. In these circumstances I cannot agree with the statement that "We are at a loss to understand how it can be argued from this state of facts that the government agreed that $34,814.04 more was due the taxpayer." The Commissioner of Internal Revenue is not required to agree independently of his official allowance of the overpayment and the issuance of a certificate of overassessment as to the amount due the taxpayer. Finding 4, therefore, I think answers finding 6. The very fact that he, as the responsible officer, officially makes the allowance of the overpayment for the particular taxable year and delivers to the taxpayer the certificate of overassessment showing the overpayment due the taxpayer for such taxable year gives rise to an implied promise to pay the overpayment if there is no tax for another taxable year that can be legally collected, and such statement of the account for the taxable year involved "gives rise to a new cause of action with a new term of limitation." There is no appeal from the Commissioner's allowance of an overpayment and the statute of limitation which requires a suit to be instituted within two years after the disallowance of a claim for refund in the case of rejected claims, or within five years after the tax was paid, does not apply.

The statute of limitation is jurisdictional in this court. In Naumkeag Steam Cotton Co. v. United States, 2 F. Supp. 126, decided January 9, 1933, this court recognized that a suit instituted within six years after the delivery of the certificate of overassessment to recover a portion of an overpayment allowed and credited against a barred tax for another year was timely but dismissed the petition on the ground of estoppel.

The next contention of the defendant, which is not discussed in the majority opinion, is that plaintiffs' cause of action for interest on the unrefunded portion of the 1919 overpayment accrued when the Commissioner signed the schedule of refunds and credits May 15, 1924, and was therefore barred at the time the petition was filed on June 10, 1930. We held in Bonwit Teller & Co. v. United States, 52 F.(2d) 904, 72 Ct. Cl. 559, certiorari denied 285 U. S. 538, 52 S. Ct. 311, 76 L. Ed. 931, a case in all respects similar to the present, that, where an overpayment was timely allowed and illegally credited, interest continued to run under the statute when a suit was brought to recover the balance of the overpayment and that the taxpayer was entitled to recover interest on the overpayment allowed and unpaid from the date of payment of tax to a date not more than thirty days preceding the date of the refund check in accordance with section 177 (b) of the Judicial Code as amended by section 615 (a) of the Revenue Act of 1928 (28 USCA § 284 (b). Plaintiffs are, therefore, entitled to recover the interest claimed.

I am of opinion that judgment should be entered in favor of plaintiffs for $34,814.04 with interest at 6 per cent. per annum on

$12,141.05 from September 15, 1920, and on $22,672.99 from June 14, 1920, to such date as the Commissioner of Internal Revenue may determine in accordance with the provisions of section 177 (b) of the Judicial Code, as amended by section 615 (a) of the Revenue Act of 1928.