**PIONEER COAL & COKE CO. v.
UNITED STATES.
No. K—483.**

Court of Claims.
May 4, 1936.

668

Thomas Watson, of Pittsburgh, Pa., for plaintiff.

J. W. Hussey, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for defendant.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, JJ.

LITTLETON, Judge.

With reference to the amounts of $7,029.66 and $9,755.27, overpayments allowed by the Commissioner of Internal Revenue for 1917 and 1918 and credited April 27, 1925, to the unpaid portion of the tax shown and assessed on the consolidated return filed for 1920, the plaintiff, in paragraphs 2 and 19 of its petition filed in this court, seeks to recover these amounts as overpayments for 1917 and 1918, and in the original brief the court was asked to enter judgment for these amounts as overpayments for 1917 and 1918. In the reply brief plaintiff contends that these amounts, totaling $16,784.93, are recoverable in this proceeding as an overpayment for 1920 under the printed language "or such greater amount as is legally refundable," contained in the claim for refund filed for 1920 for $94,013.91, or as overpayments for 1917 and 1918 on the theory of an account stated. We are unable to agree with either position. No cause of action is stated in the petition for the recovery of these amounts as a collection or overpayment for 1920, but, on the contrary, such amounts were set up in the petition and sought to be recovered as overpayments for 1917 and 1918. Moreover, such credits were not included or in any way mentioned in the claim for refund filed for 1920. The refund claim as filed related wholly to the Commissioner's determination and allocation with respect to the tax assessed on the original return and to the resulting claimed overpayment of $94,013.91, hereinafter discussed. The amounts cannot be recovered as overpayments for 1917 and 1918 for the reason that no refund claims for those years were filed and the certificates of overassessment delivered on May 4, 1925, showed the credits. There was no statement of account showing a balance in favor of plaintiff. Leisenring et al., Executors, v. United States, 3 F.Supp. 853, 4 F.Supp. 993, 78 Ct.Cl. 171; First National Bank of Beaver Falls, Adminis-

trator, v. United States, 8 F.Supp. 484, 9 F.Supp. 424, 79 Ct.Cl. 744; Pratt & Whitney Co. v. United States, 10 F.Supp. 148, 80 Ct.Cl. 676.

Plaintiff contends on behalf of itself, the National, and the Tidewater Companies in support of its right to recover the claimed overpayment of $94,013.91 for 1920 (1) that the Commissioner was bound under the statute to assess the tax shown to be due on the consolidated return separately against the four corporations whose income and invested capital were included therein in the proportion of their respective net incomes to the total consolidated net income as shown by the affiliated return, and that the assessment of the entire amount of $686,222.58 shown to be due by the consolidated return against plaintiff alone was erroneous; (2) that under the agreement made between the four corporations, parties to the affiliated return, to the effect that each corporation was to pay its own tax upon the net income properly assignable to it, the tax liability of the Consolidated Coke Company was to be assessed against and paid by it and that an assessment of the tax liability of that company, in the name of plaintiff, was illegal; and (3) that the Commissioner, when he found and decided that the Consolidated Company was not affiliated with the other corporations, should have corrected his original assessment of the entire tax liability of $686,222.58 upon the affiliated return against plaintiff by abating $42,510.55 thereof, representing the reduction in the tax liability of plaintiff, National, and Tidewater Companies resulting from the computation of the profits tax under section 328, act of 1918, 40 Stat. 1093, and by abating $222,955.77, representing that portion of the total assessment allocated to the Consolidated Coke Company, so that the corrected assessment against plaintiff for itself and the two affiliated corporations would have been only $420,756.26.

Upon the record in this case we fail to find anything in what the Commissioner did that would give the plaintiff, the National, or the Tidewater Companies, parties to the affiliated group for 1920, the right to recover any amount unless they actually overpaid their tax. This they did not do with respect to the tax paid upon the consolidated return, as we shall hereinafter endeavor to show. In so far as the credits of the overpayments for 1917 and

1918 made against the portion of tax shown on the consolidated return for 1920 are concerned, no recovery can be had in respect thereto for the reasons hereinbefore mentioned.

When the consolidated return was filed, each of the four corporations whose income and invested capital were included therein was to be responsible for payment through plaintiff, as agent, of its portion of the tax shown to be due on the consolidated return on the basis of the ratio which its tax, if computed on a separate return, bore to the total net consolidated income as disclosed in the return, as nearly as could be determined. This was done so far as the payments made to the government were concerned. The evidence does not show that there was any definite agreement as to the manner in which the Commissioner should assess the tax or that any particular amount should be separately assessed by the Commissioner against any one or more of the corporations included in the affiliated group. The Commissioner was not advised of any understanding or agreement among the four corporations joining in the affiliated return until April 6, 1929, when the plaintiff, National, and Tidewater Companies constituting the new affiliated group endeavored to have the Commissioner change his determination and allocation of the tax shown and assessed upon the original consolidated return so as to show an overassessment of at least $94,013.91 for 1920 in favor of plaintiff. We think the Commissioner was correct in refusing to do this and we are also of the opinion that the Commissioner's allocation of the assessment of $686,222.58 made on the return to the correct tax liability of plaintiff, National, and Tidewater Companies as the new affiliated group and to the Consolidated Coke Company, the income of which was included in the assessment mentioned, was in compliance with the statute, and in substantial accordance with the understanding between the four corporations when the consolidated return was filed. This was on the basis of the ratio which the net income of each separate company bore to the total net income as shown in the original return. If the Consolidated Coke Company had not been eliminated from the affiliated group, the Commissioner in his final determination would have made the same sort of allocation. The fact that the total tax shown on the affiliated return was assessed in the name of plaintiff rather than against the four corporations in separate amounts was of no controlling importance when the Commissioner came to allocate the total assessment made on the return to the separate corporations on the basis of the net income and invested capital properly assignable to each in accordance with its final determination. The assessment of the tax shown to be due on the consolidated return against plaintiff who made the return, even if not strictly in accordance with the statute, was not illegal. Nor did the manner in which the assessment was made render the tax collected for 1920 illegal or refundable. For the purpose of allocation of the assessments to the several corporations, no new assessments were necessary and the question whether any of the corporations were entitled to a refund depends upon whether it had overpaid its tax rather than upon the manner in which the original assessment was made. Appeal of Mather Paper Co., 3 B.T.A. 1; Meyersdale Fuel Co. v. United States, 44 F.(2d) 437, 70 Ct.Cl. 765; Mahoning Investment Co. v. United States, 3 F.Supp. 622, 78 Ct.Cl. 231. Compare Lewis et al. v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293. A direct and separate assessment against a taxpayer is not necessary to a valid payment or collection of a tax due. Meyersdale Fuel Co. v. United States, supra. John Muir v. United States, 3 F.Supp. 619, 78 Ct.Cl. 150.

Following the usual practice, the Commissioner prior to examination and audit of the consolidated return filed for 1920 assessed the tax shown to be due thereon in the name of the company making the return. Assessments of taxes shown to be due upon returns filed with the collectors are made by the Commissioner on assessment lists prepared by the collector and forwarded to the Commissioner with the returns listed therein. These assessments, whether made on lists prepared by the collector or the Commissioner, are made without investigation or examination of returns and of necessity the tax shown on the return is listed and assessed in the name of the person or corporation making the return, and this is true in the case of consolidated returns, unless there is filed with the return a definite statement setting forth the names of taxpayers to be assessed and the amount to be assessed against each. The procedure just mentioned was followed in this case. If it be as-

sumed that the assessment in the name of the plaintiff of the total taxes shown on the consolidated return was erroneous, this error was corrected when the Commissioner allocated the assessment to the several corporations in the ratio which the net income of each separate company of the group bore to the total net income as shown by the original return. The division and allocation of the original assessment relieved plaintiff, National, and Tidewater Companies from further payment in respect of the portion of the assessment allocated to the Coke Company.

This brings us to the question whether the tax for 1920 was overpaid in connection with the payments made in respect of the tax shown on the consolidated return. As hereinafter explained in more detail, the alleged overpayment is based on the claim that the total tax paid to the government by the plaintiff, the National, and the Tidewater Companies in respect of the tax disclosed to be due by the consolidated return for 1920 before the Consolidated Company was eliminated from the affiliated group was $514,770.17, and that the correct tax liability of these three corporations as finally determined by the Commissioner was $420,756.26. It is obvious that the only ground upon which this claimed overpayment of $94,013.91 can be supported is by proof that the tax paid to the government, or contributed and used for that purpose, by the plaintiff, the National, and the Tidewater Companies, as the taxpayers, was $514,770.17. In an attempt to establish this fact, it is contended that the Consolidated Coke Company, which was included in the consolidated group when the return was made but afterwards eliminated by the Commissioner, paid, as a "taxpayer," only $1,452.41 which was the amount of cash delivered by the Coke Company to the plaintiff to be paid to the collector with an additional amount of $103.25 to be contributed by plaintiff to take care of the excess of the first installment of $171,555.66 of the tax shown to be due on the consolidated return over and above the Consolidated Coke Company's claim for credit of an alleged overpayment for 1918 of $170,000. In answer to this the defendant points to the fact that the Consolidated Coke Company on June 13, September 12, and December 2, 1921, issued and delivered to plaintiff its three checks, each in the amount of $42,863.10, the exact amount of the Coke Company's pro-

portionate part of the second, third, and fourth installments of the total tax of $686,222.58 shown on the consolidated return. Each of these checks bore on its face the indorsement that it was in full payment of the Coke Company's portion of the tax installment for 1920 to which it related. These checks were payable to and were cashed by plaintiff and the amounts thereof, except the third check, were retained and used by plaintiff, so far as the record shows, to reimburse it for equal amounts transmitted by plaintiff to the collector as the agent of the other three corporations. The third check of the Coke Company for $42,863.10, dated December 2, 1921, was indorsed by plaintiff and delivered to the collector in partial payment of the fourth installment. In answer to this, plaintiff contends that the three amounts of $42,863.10 each, totaling $128,589.30, were not contributions by the Consolidated Coke Company as a "taxpayer" toward the payment of any portion of the second, third, and fourth installments of tax shown on the consolidated return, but were returns of loans made to the Consolidated Coke Company on May 2, 1921, of $56,182.64 by plaintiff, $9,203.85 by the National Company, and $61,750.40 by the Tidewater Company, totaling $127,136.89, which loans, it is contended, were made to the Coke Company by plaintiff, National, and Tidewater Companies in the exact amounts of their proportionate liabilities on the first installment of tax shown on the consolidated return because the Consolidated Company had taken care of such liability by the filing of its claim for credit. These circumstances, however, will not support plaintiff's claim for an overpayment. The fact remains that the total amount of cash contributed and paid to the government by the plaintiff, National, and Tidewater Companies as taxpayers in connection with the tax shown to be due and assessed upon the consolidated return for 1920 was only $386,180.87 made up of direct payments or contributions of $173,318.13 by plaintiff, $27,611.55 by National, and $185,251.19 by Tidewater; the balance of the amount of $514,770.17, which was remitted to the collector by plaintiff as the paying agent, was directly paid by the Coke Company out of its funds by its three checks, each in the amount of $42,863.10, the exact amount of the Coke Company's proportionate part of the second, third, and fourth installments. The fact that plaintiff, National,

and Tidewater Companies in May, 1921, loaned, as they claim, to the Consolidated Company amounts totaling $127,136.90 which they might have paid to the collector in March, 1921, if the plaintiff had not filed a claim for credit against the first installment, does not make the amount of $128,589.30 subsequently contributed by the Coke Company by its checks drawn against its funds in June, September, and December, 1921, when the second, third, and fourth installments fell due, a payment to the government of a tax by plaintiff, National, and Tidewater Companies.

The filing of the claim for credit against the first installment of tax reported for 1920 paid nothing. This claim was without merit and was subsequently rejected. What the situation would now be if the 1918 overpayment claimed had been allowed and credited, as requested, we need not decide. The fact here is that by filing this claim for credit the Coke Company paid nothing to the government on its own behalf or on behalf of any other corporation. The amounts totaling $127,136.90 paid to the Coke Company on May 2, 1921, by plaintiff, National, and Tidewater Companies (finding 2) at most only created the relationship of debtor and creditor between the Coke Company and such corporations. If the amounts totaling the sum mentioned were loans, as claimed, the Coke Company is still indebted to these companies for such amounts if repayment has not been made. If they were paid to the Coke Company by the plaintiff, National, and Tidewater Companies on the belief that the claim for credit was valid for an overpayment of $170,000 for 1918 and therefore the equivalent of a cash payment, as strongly appears to have been the case from the manner in which the matter was handled, these companies simply purchased an interest in a claim, which, as matters turned out, was valueless. These facts and circumstances compel the conclusions, first, that upon the filing of the claim for credit, the only effect of which was to postpone collection of the first installment by the collector, none of the four corporations, parties to the consolidated return, paid anything on the first installment, except $1,452.41 by the Coke Company and $103.25 by plaintiff; second, that the liability of each of the corporations in connection with the second, third, and fourth tax installments shown and assessed upon the return was the amount set forth in the tabulation in finding 3, and these were the amounts paid by each corporation; third, that the Coke Company's proportionate liability on each of these three installments was $42,863.10 and that amount it contributed out of its funds by three checks payable to plaintiff; fourth, that plaintiff, National, and Tidewater Companies each paid from its own funds its proportionate part of the second, third, and fourth installments of tax determined to be due by each on the basis of its net income for 1920, just as the Coke Company did. It is clear, therefore, that the Coke Company paid no tax on the first installment for plaintiff, National, or Tidewater Companies for which they reimbursed it, and the three amounts of $42,863.10, each paid by the Coke Company in connection with the second, third, and fourth installments, were not payments by plaintiff, National, and Tidewater Companies on account of their tax liabilities for 1920.

No money belonging to plaintiff, National, or Tidewater Companies is now in the hands of the government in excess of what they properly owed as taxes for 1920. No overpayment has been made by plaintiff or by any other corporation which joined in the consolidated return for 1920. In fact the total amount of $386,180.87 directly paid on this return to the government out of the funds of the plaintiff, National, and Tidewater Companies, as taxpayers, for 1920, was $34,013.91 less than their combined tax liability of $420,756.26. The petition is dismissed. It is so ordered.