## AMERICAN NEWSPAPERS, Inc., v. UNITED STATES.

District Court, S. D. New York
Aug. 31, 1937.

Konta, Kirchwey & Engel, of New York City, and Arthur H. Deibert, of Washington, D. C. (Smith, Deibert & Ristig, of New York City, of counsel), for plaintiff.

Lamar Hardy, U.S. Atty., of New York City (Edward H. Horton, Sp. Asst. to Atty. Gen., and Leon E. Spencer, Asst. U.S. Atty., of New York City of counsel), for the United States.

LEIBELL, District Judge.

This action was commenced in the name of the Star Company as plaintiff. Subsequently by an order of this court the action was continued in the name of American Newspapers, Inc., as successor in interest to the Star Company, dissolved. Plaintiff is suing to recover part of the deficiencies of income and excess profits

taxes for the years 1918-1921, inclusive, which were assessed against, and paid by, its predecessor, Star Company, upon the consolidated income of a group of affiliated corporations. During the tax years in question, the group of corporations, some of which were located in various other internal revenue districts, and eleven of them in the second Internal Revenue District of New York, were affiliated with the Star Company as the parent corporation. For convenience, the present plaintiff will hereafter be referred to as though it were identical with the Star Company.

In this action, plaintiff seeks to recover so much of the deficiency tax upon the consolidated income of the group for the years in question, as it claims should have been apportioned among and assessed against the subsidiary corporations in accordance with their respective incomes, instead of the entire deficiency being assessed against the plaintiff.

The relevant part of the statute applicable to the tax years 1918-1920, inclusive, is section 240 of the Revenue Act of 1918 (40 Stat. 1081), which provides as follows:

"*Consolidated Returns.*

"Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return. * * *

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each."

The regulations promulgated by the Commissioner of Internal Revenue for the enforcement of that act were known as Regulation 45, article 632 of which provides:

"Affiliated corporations, as defined in the statute and in article 633, are required to file consolidated returns on form 1120. The consolidated return shall be filed by the parent or principal reporting corporation in the office of the collector of the district in which it has its principal office. Each of the other affiliated corporations shall file in the office of the collector of its district form 1122, along with the several schedules indicated thereon. The parent or principal corporation filing a consolidated return shall include in such return a statement specifically setting forth (a) the name and address of each of the subsidiary or affiliated corporations included in such return, (b) the par value of the total outstanding capital stock of each of such corporations at the beginning of the taxable year, (c) the par value of such capital stock held by the parent corporation or by the same interests at the beginning of the taxable year, (d) in the case of affiliated corporations, the stock of which is owned or controlled by the same interests, a list of the individuals or partnerships constituting such interests, with the percentage of the total outstanding stock of each affiliated corporation held by each of such individuals or partnerships during all of the taxable year, and (e) a schedule showing the proportionate amount of the total tax which it is agreed among them is to be assessed upon each affiliated corporation. * * * "

Section 240 of the Revenue Act of 1921 (42 Stat. 260), which applies to the tax year 1921, is substantially the same as the corresponding section of the Revenue Act of 1918; and article 632 of Regulation 62, which pertains to the later act, is substantially the same as the corresponding article of Regulation 45 above quoted.

The plaintiff, on behalf of itself and its affiliates, filed on Form 1120 with the collector of internal revenue for the Second District of New York a final consolidated corporation income and profits tax return for each of the years 1918 to 1921, inclusive, to each of which returns was attached a schedule setting forth an apportionment of the consolidated tax liability among the corporations of the affiliated group.

At or about the time that the respective consolidated returns were filed, the plaintiff and its affiliated corporations filed with the collectors of their respective districts information returns for each of those years, 1918 to 1921, on Form No. 1122, setting forth an apportionment of the consolidated tax liability shown on the respective consolidated returns, except that in such information returns for the year 1921 the information respecting the apportionment of

the tax liability was omitted under the circumstances hereafter related.

In addition, plaintiff and its affiliated corporations had each previously filed with the collector of its own district a tentative return for each of those years, 1918 to 1921, inclusive.

The original assessment for 1918 was apportioned, based upon the tentative or information returns filed by the respective corporations, and aggregated $161,248.59. Of that amount $140,319.86, being the tax shown in the final consolidated return for that year, was paid by the respective corporations to the collectors for their respective districts, leaving an unpaid balance of $20,928.73 for which abatement claims were filed by certain of the corporations. Such abatement claims were rejected in December, 1925, and January, 1926, excepting one small one, and thereafter the unpaid balance of $20,675.48 was paid by plaintiff during the months of June and December, 1926. The amounts attributable to the several corporations were charged to them by plaintiff and they reimbursed plaintiff therefor.

The original assessment for the year 1919 was apportioned among the corporations of the affiliated group, each of which corporations paid to the collector of its own district the tax liability so apportioned to it for those years.

For the year 1920, however, the Commissioner assessed against the plaintiff, in the second collection district of New York where the plaintiff was located, the entire tax liability shown on the final consolidated return for that year, which plaintiff filed July 15, 1921, and in addition assessed against those affiliated corporations which were located in districts outside of the Second District of New York a portion of the consolidated tax liability according to their respective incomes. However, an abatement was later allowed on account of the overlapping assessment, as will be hereinafter discussed.

Prior to such assessments for 1920, plaintiff and its affiliates had paid to the collectors of their respective districts one-quarter (representing the first installment) of their respective apportioned tax liability for 1920, as shown on their respective tentative returns for 1920 filed in March, 1921.

On May 4, 1921, Walter G. Langdon, general auditor Hearst Corporations, wrote W. A. Peirgnitz, United States government inspector, at Washington, as follows:

"If, as a result of your examination of the Consolidated Income Tax Return of Star Company and other Hearst Corporations, there should be an additional Excess Profits Tax assessed for the Year 1917, please have said additional tax allocated to Star Company and said Company will then apportion it to the different Hearst Corporations.

If there should be refunds due to several of the Corporations, please have said refunds deducted from the additional assessment against Star Company. * * *"

This letter is part of the agreed statement of facts (paragraph X), but its admissibility is challenged by plaintiff on the ground that what plaintiff did in respect to the 1917 tax is not relevant or material to the issues in this suit involving the 1918 to 1921 taxes. I have admitted the letter, because I am of the opinion that it has a bearing on the change in practice that subsequently took place in respect to making the plaintiff the tax-paying corporation for the group, of which it was the tax-computing unit.

On June 15, 1921, the plaintiff and its affiliated corporations transmitted to the collectors of their respective districts their individual checks for the second installment of the estimated amount of their respective proportions of the tax for 1920. But the collector for the Second District of New York requested the representatives of the plaintiff and such of its affiliated corporations as were located in the Second District to substitute the plaintiff's check for the aggregate of the individual checks of those several corporations, and on the following day, June 16, 1921, such request was complied with. The consolidated final return for 1920 was filed by plaintiff on July 15, 1921, to which date its time for filing had been extended.

The third and fourth installments for 1920 were paid respectively on September 15, 1921, and December 15, 1921, by the checks of plaintiff for the amount of the tax apportioned to the group located in the Second District of New York. In the case of each installment, the check was accompanied by a letter showing how the tax was apportioned among the several members of the group. The remittances from the corporations located outside the Second District were sent to the collectors

388

of their respective districts. The plaintiff was reimbursed for the respective shares of the taxes so paid on behalf of its affiliates located in the same (the Second) district.

On Form 1122, "Information Return of Subsidiary or Affiliated Corporation," for the year 1918 (Exhibit 5), line 9 reads: "State amount of income and profits taxes for the taxable year apportioned to the subsidiary or affiliated corporation making this return. * * *"

Form 1122 for the information returns for the years 1919 to 1921, in line 7 thereof, substantially reads as follows:

"In case of all consolidated returns, the department prefers that the total tax assessed against the affiliated group be paid by the parent or principal reporting company instead of being apportioned among the affiliated companies.

"If apportionment is made state the amount of income and profits tax for the taxable year to be assessed against the subsidiary or affiliated company making this return. * * *"

On January 12, 1922, the collector for the Second District wrote a letter to the representatives of the plaintiff and its affiliates wherein he said:

"As previously advised, in future when consolidated returns are filed it is preferable to the Department and expedites the handling of the records, to have the parent or principal reporting company file Form 1120 including the net income of the subsidiaries and pay the total tax with its own check when each installment is due.

"It may in turn bill on its subsidiaries for their share of that installment. Form 1122 should then be filed by each of the subsidiary companies indicating no tax to be assessed. Form 1122 should be filed with the Collector of Internal Revenue in the District in which the subsidiary is located."

The figures for the apportionment of the taxes to the respective corporations were filled in on the information returns (Form 1122) in the place indicated therefor for the years 1918 to 1920, but for the year 1921 the space for that information was left blank.

On March 14, 1922, with its check for the first installment of the estimated consolidated tax liability for 1921, plaintiff addressed a letter to the collector of the Second District of New York, saying: "In

accordance with your request, the previous practice of having the tax apportioned to affiliated companies located in other districts paid in those districts has been abandoned, and the entire payment for Star Company and all of its affiliated companies is being made in this district."

In filing the final consolidated return for 1921, the plaintiff wrote an accompanying letter, addressed to the collector of the Second District, dated September 15, 1922, saying: "In accordance with your request, the entire amount of tax payable has been incorporated in one check. As between the affiliated companies, however, the payments have been apportioned as shown on page 197 of the enclosed return."

With the fourth and final installment of the consolidated tax for 1921, plaintiff wrote a letter dated December 15, 1922, to the same collector, saying: "As heretofore requested by your office, the entire amount of the fourth installment of tax payable by Star Company and its affiliated corporations has been incorporated in the enclosed check. As between the affiliated corporations, however, the payments have been apportioned as shown on page 197 of the consolidated return heretofore filed with you."

The entire amount of the consolidated tax shown on the consolidated return for 1921, amounting to $1,110,465.61, was assessed against and paid by plaintiff in the Second District of New York, and plaintiff was reimbursed by its affiliates for the taxes so paid by it on their behalf.

The Commissioner caused audits to be made of the final consolidated returns filed by the plaintiff, and of the records of plaintiff and its affiliates, for the years 1918 to and including 1921. As a result thereof, the Commissioner on January 30, 1924, mailed to plaintiff a 30-day letter proposing a deficiency for 1918 of $641,059.20. Plaintiff filed an application for appeal with a brief in May, 1924. After several conferences, the Commissioner under date of September 21, 1925, sent the plaintiff a 60-day letter of his determination of a tax deficiency for 1918 in the sum of $99,907.35. In the meantime, the Commissioner had obtained waivers of the limitations on the assessment executed by the plaintiff and each of its affiliates.

On December 12, 1925, within the proper time as so extended, the said deficiency for 1918 was assessed against the plaintiff in the Second District. No appeal was taken,

and on January 11, 1926, the deficiency was paid by the plaintiff pursuant to notice and demand, dated December 30, 1925. Of the amount thereof, there was charged by plaintiff to its several affiliated corporations $59,741.74, in proportion to their net incomes, and those corporations in turn reimbursed the plaintiff.

Similarly for the year 1919 the Commissioner notified plaintiff on November 13, 1924, of his determination of a deficiency in income and excess profits taxes of $576,305.94. This proposed deficiency was, on reconsideration, fixed at $115,340.19, and said sum with interest was assessed against the plaintiff in the Second District on March 31, 1926. No appeal was taken, plaintiff paid the assessment on April 26, 1926, and $93,285.10 thereof was charged by plaintiff to the several affiliates, and they in turn reimbursed plaintiff therefor.

For the year 1920 the Commissioner had assessed a total amount of income and excess profits taxes of $762,759.63 against plaintiff as shown on the face of plaintiff's consolidated return and had also assessed against the several affiliates outside the Second District the sum of $352,400.25, a total of $1,115,159.88. This was an overlapping assessment in respect to the $352,440.25, which had been paid by said affiliates and had been included in plaintiff's consolidated return. On March 19, 1923, plaintiff filed a claim for the abatement of said sum. When the Commissioner examined and reviewed plaintiff's consolidated final return for 1920, he sent the plaintiff a 30-day letter, dated September 21, 1926, showing a proposed tax liability of $800,299.59. In his consideration of the protest filed thereto the Commissioner apparently determined that the amount should be further increased, and on April 13, 1927, he mailed a 60-day letter to plaintiff showing a final determination of $863,237.25 as plaintiff's tax liability for the year 1920, $100,477.62 over the $762,759.63 shown on the face of its final consolidated tax return.

Plaintiff's claim for abatement was allowed in the sum of $251,922.63, reducing the original assessment against plaintiff for 1920 of $762,759.63 by $251,922.63, and leaving a balance against plaintiff of $510,837, on which it had paid in installments in 1921 the sum of $410,359.38. The difference between the two last mentioned figures, namely, $100,477.62, was the amount of the additional assessment against plaintiff for the year 1920. On April 16, 1927, plaintiff executed a waiver of its right to file a petition with the United States Board of Tax Appeals and consented to the collection of the said deficiency. On August 1, 1927, the collector demanded payment of the sum of $100,477.62, and it was paid August 10, 1927, without protest. Of that sum of $100,477.62 plaintiff was reimbursed to the extent of $72,314.99 by its affiliates as their part of the additional assessment.

The Commissioner examined and reviewed plaintiff's consolidated return for 1921, and on September 21, 1926, sent plaintiff a 30-day letter proposing a deficiency of $905,503.69. Plaintiff filed an application for an appeal, recommendation, and hearing, and the amount of the tax deficiency was finally fixed at $367,662.82, together with $104,771.30 interest, for which sum the Commissioner mailed on April 13, 1927, a 60-day letter to plaintiff. On April 16, 1927, plaintiff executed a waiver of its right to appeal to the Board of Tax Appeals and consented to the assessment and collection of said deficiency tax for the year 1921. The total sum was thereupon assessed against plaintiff, notice and demand made July 6, 1927, and the full amount was paid by plaintiff July 16, 1927. Of said additional assessment, $373,760.05 was charged by plaintiff to its affiliates, and they in turn reimbursed plaintiff in said amount.

Plaintiff timely filed with the collector for the Second District of New York claims for refund for the years 1918 and 1919, on January 10, 1930, and for the years 1920 and 1921, on March 15, 1930, upon the ground that such portions of the deficiencies for those years were erroneously included in the assessments against the plaintiff instead of being apportioned to, and assessed against, the affiliated corporations.

At no time subsequent to January 30, 1924 (when the Commissioner proposed to assess the deficiency tax on the consolidated income for 1918), down to January 10, 1930, the date on which plaintiff filed its claims for refund for 1918 and 1919, did plaintiff or any member of the affiliated group suggest to the Commissioner or his representatives that the deficiency tax should be allocated to, and assessed against, the several members of the group in proportion to their net incomes, instead of being assessed entirely against plaintiff.

Plaintiff claims that there was no proof of an agreement among the affiliates to

the effect that the entire tax on the consolidated income should be assessed against the plaintiff; that, on the contrary, the returns filed and the correspondence all consistently show an agreement and intention that the taxes for all of the years in question should be apportioned.

Plaintiff urges that no implication of any agreement to depart from the practice of apportioning the assessment of the tax, as in previous years, should arise from its compliance with the request of the collector that the entire tax on the consolidated income be paid by its check to the one collector.

On the other hand, the defendant contends that an agreement that the entire tax on the consolidated return be assessed against, and paid by, the plaintiff, should be deduced from the following: Plaintiff's change to the practice of itself paying the entire tax on the consolidated income, and the omission of the figures for the apportionment from the information returns for 1921, all in response to the collector's letter dated January 12, 1922; the letter of plaintiff's representative to the collector dated March 14, 1922, quoted above; plaintiff's failure to object, in the appeals from the proposed deficiency assessments, and in the briefs and conferences with the Department in support thereof, that the deficiencies should have been apportioned among the affiliates instead of all being assessed against plaintiff; the actual payment of the deficiency tax without raising the objection, and plaintiff's failure to claim a refund of a corresponding part of the original assessment for 1921; and further that plaintiff itself, through a letter of its auditor, dated May 4, 1921, requesting that the additional assessment and refunds of the affiliates for the year 1917 be charged and credited to plaintiff on the re-examination of plaintiff's consolidated income tax return for 1917, was the first to adopt this change in practice.

■ The first point to be considered is the interpretation to be placed upon the plaintiff's action in complying with the collector's letter of January 12, 1922. Plaintiff contends that that letter concerned merely the method of payment. But the defendant appears to contend that the change of practice requested therein related to the method of assessment as well as the method of payment, and that this view is supported by the statement in that letter that Form 1122 should, in case of compliance, be filed by each of the subsidiary companies indicating no tax to be assessed.

However, the statute involved indicates that the affiliated group of taxpayers, not the Treasury Department, was to have the option as to the method of assessment of the tax. It should not be assumed that the Department intended to compel the taxpayer to surrender that option, and the correspondence of the collector with the taxpayers should not be construed to have that effect, unless such an intention is clearly expressed. Therefore the better view would seem to be, that the collector's letter, and the taxpayer's compliance therewith, concerned merely the method of payment, and that they should not be construed as indicating an agreement that liability for the entire tax should be placed upon the plaintiff. This view is supported by the fact that, although the information returns for the year 1921 failed to give figures for the apportionment, nevertheless a schedule showing such apportionment was attached to plaintiff's final consolidated return for that year as well as to the returns for the previous years.

■ Plaintiff's letter to the collector dated March 14, 1922, properly construed, does not indicate that the former practice of having assessments apportioned among the affiliates was to be abandoned in favor of a single assessment against plaintiff. The following paraphrase will show the proper construction of such letter: In accordance with your request, the previous practice of having the tax (which is) apportioned to the affiliated companies located in other districts, paid in those districts, has been abandoned, and the entire payment for Star Company and all of its affiliated companies is being made in this district.

The words "which is" are interpolated. Thus that letter and also plaintiff's letters to the collector, dated September 15, 1922, and December 15, 1922, indicated that the change of practice in regard to the tax was intended to relate to the method of payment and not the method of assessment.

We then come to consider the effect of plaintiff's failure to object to the method of assessment, until long after the tax had been assessed and paid.

The case of Essex Coal Company v. Commissioner, 39 F.(2d) 892 (C.C.A. Sixth Circuit), relied on by the plaintiff, is a strong authority for the proposition that a mere failure at prior opportunities to raise the objection that the tax should

have been apportioned, instead of being assessed all against the parent corporation, does not of itself create an estoppel against the taxpayer nor support the inference of an agreement that the tax should be as it was. However, in that case, the disputed or deficiency tax had not been paid, the proceeding involving a petition to review the order of the Tax Board finding a deficiency against the petitioner.

On the other hand, the cases which emphasize the weight to be given to the failure of the taxpayer to make prompt objection by appeal or otherwise to the method of assessment also contain additional elements to support the inference of an agreement that the tax should be assessed all against the one corporation.

Such cases are: Freeport Texas Co. v. Bowers, 77 F.(2d) 288, 291 (C.C.A. Second Circuit), where amended returns were filed by certain subsidiaries in which it was indicated that no taxes were to be assessed against such subsidiaries; and American Textile Woolen Co. v. Commissioner, 68 F.(2d) 820 (C.C.A. Sixth Circuit), certiorari denied 293 U.S. 558, 55 S.Ct. 70, 79 L.Ed. 659, where abatement claims were filed by various of the subsidiaries on the grounds that a consolidated return had been filed for the whole group and that the tax was being paid by the parent corporation. Moreover, in those two cases, the disputed tax had been actually paid in whole or in part by the plaintiff, the parent corporation. In the Freeport Texas Co. Case the court stated "time to assess taxes against the subsidiary corporations has expired." In both cases it was held that the failure of the taxpayer to raise the question until long after the tax had been assessed and paid, taken together with the other factors, precluded the plaintiffs from attacking the assessment of the tax against the parent corporation on the ground that the tax should have been assessed against their affiliates.

The facts in the case at bar bearing on the question of an agreement for the assessment of the entire tax against the parent corporation seem to fall somewhere between the facts in the Essex Coal Co. Case on the one hand, and those in the Freeport Texas Co. and American Textile Woolen Co. Cases on the other.

Although compliance with the collector's request in the case at bar, and the plaintiff's failure to object at earlier opportunities to the method of assessment, might not alone support the inference of an agreement for the assessment of the entire tax against the plaintiff, nevertheless the additional factor of the actual payment of the tax without protest or objection might well be deemed to overbalance the scales.

However, even assuming that there was no agreement among the affiliated corporations that the entire tax on the consolidated income should be assessed against the plaintiff, it does not follow that plaintiff is entitled to recover the part of the deficiency tax which should have been apportioned, as plaintiff claims, to the other corporations.

The plaintiff has not overpaid its share of the tax. The corrected consolidated income is not in dispute nor is the amount of the total deficiency tax assessed thereon. It is admitted that the respective proportions of that tax properly attributable to the various subsidiaries in accordance with their incomes were charged to them respectively by the plaintiff, and that the plaintiff was reimbursed therefor. Such charge of their respective proportions of the tax to the subsidiaries and their repayment of the same to the plaintiff were in accord with the suggestion made in the collector's letter to the plaintiff of January 12, 1922, and with plaintiff's letters to the collector dated September 15, 1922, and December 15, 1922.

Therefore, even if there was no agreement that the entire tax should be assessed against the plaintiff, there was an agreement that the proportions of the tax attributable to the subsidiaries should be paid by them through the plaintiff. Such an agreement has in effect been carried out. The proper tax has been actually paid by the parties that plaintiff claims should properly have paid it. Plaintiff did not file its claims for refunds herein on the 1918-1921 taxes until on the average of about three years after the statute of limitations had run against the assessment of any deficiency against the several affiliates. The statute of limitations for the reassessment of the tax having expired, a recovery by the plaintiff will result in the loss by the government of the tax properly payable by the subsidiaries, on the technical ground that the assessment of the deficiency on the consolidated income was not apportioned among the affiliated corporations.

The law does not require such a result. On the contrary, it is held that, where the tax was actually due and owing by the parties who paid it, it may not be recovered back on the ground that the assess-

ment was not properly made and that the time for recomputation has expired.

In Meyersdale Fuel Co. v. United States, 44 F.(2d) 437, 446 (Court of Claims), certiorari denied 283 U.S. 860, 51 S.Ct. 653, 75 L.Ed. 1465, which was a claim to recover an overpayment of income and profits taxes for 1920, it appeared that, after the filing of the consolidated return and the payment of the entire tax by the plaintiff, the Commissioner determined that the corporations were not affiliated. Before making the payments, plaintiff had charged the other corporations with their respective proportionate parts of the tax according to their respective incomes, and they had paid their proportions to the plaintiff.

The Commissioner at first had entered the total tax against the plaintiff, but, after determining that the corporations were not affiliated, he computed the tax of the plaintiff and its affiliates separately, and then applied to the assessments against the subsidiaries, the amount paid by plaintiff over and above the tax properly attributable to it. Plaintiff contested such application of the overassessment, claiming that it constituted a payment of taxes of the affiliates, which could not then have been assessed against them because by that time any such reassessment was barred by limitation. The court, in deciding that plaintiff was not entitled to recover the difference between the total amount paid on the consolidated return and the part attributable to plaintiff, based its decision on the following grounds: That, although there was no agreement among the corporations that plaintiff would assume the tax of the others or that their tax should be assessed against the plaintiff, nevertheless "the facts established that there was an agreement among the several corporations that the tax shown on the consolidated return of the corporations included in such consolidated return was to be paid through the plaintiff as the parent corporation. Each subsidiary corporation paid to plaintiff its proportion of the tax. * * * It merely acted as the medium through which the other corporations paid the amounts which they believed to be due upon their net income"; that it was immaterial whether the reimbursement of plaintiff by the others for their proportions of the tax was done before or after the payment of the tax by the plaintiff; that, if it was done after plaintiff had paid the tax, plaintiff would thus be advancing money to the others to the extent of their tax liability.

The court then further observed: "Taxes may be and often are collected without assessment, and this is recognized by sections 273 of the Revenue Acts of 1924 and 1926 (26 U.S.C.A. § 1047), but, in such a case, the tax, if legally due, cannot be recovered merely because it had not been formally assessed. * * * So far as these corporations were concerned, the tax due by them had been collected without assessment specifically against them."

In Pioneer Coal & Coke Co. v. U.S., 14 F.Supp. 661 (Court of Claims), where the facts were similar to those in the Meyersdale Fuel Case, the court concluded that, as the result of various credits and offsets, the plaintiff had in fact been reimbursed by the other corporations for their proper proportions of the tax, so that each corporation had paid not more than its own share of the tax. Accordingly it was held that plaintiff was not entitled to recover merely because the Commissioner should have assessed the tax proportionately against the several corporations, instead of all against the plaintiff, the court saying, at page 669 of 14 F.Supp.: "The assessment of the tax shown to be due on the consolidated return against plaintiff who made the return, even if not strictly in accordance with the statute, was not illegal. Nor did the manner in which the assessment was made render the tax collected for 1920 illegal or refundable. For the purpose of the allocation of the assessments to the several corporations, no new assessments were necessary and the question whether any of the corporations were entitled to a refund depends upon whether it had overpaid its tax rather than upon the manner in which the original assessment was made. * * * A direct and separate assessment against a taxpayer is not necessary to a valid payment or collection of a tax due"—citing the Meyersdale Case.

Dorrance v. Phillips, 85 F.(2d) 660 (C.C.A. Third Circuit), was a similar case, with the important difference, however, that there the other corporations had not paid or agreed to pay, to or through the plaintiff, their respective proportions of the tax. Accordingly the court, in distinguishing such a case from the Meyersdale Fuel Co. Case, said at page 661 of 85 F.(2d): "If the tax, had in fact been paid by the Lackawanna Company through the Temple Company, erroneously assumed to be the parent company in the group alleged to be affili-

ated, the contention of the collector might be sound under the authority of the case of Meyersdale Fuel Company v. United States (Ct.Cl.) 44 F.(2d) 437, but there can be no dispute that the Temple Company paid the entire tax and that the Lackawanna Company did not pay directly or indirectly any tax whatever assessable against it for the years 1921 and 1923. The Temple Company paid the tax, in making a consolidated return as the parent company, on the assumption that it was properly and legally affiliated with the Lackawanna Company. The payment was accordingly a pure mistake on the part of the Temple Company and cannot be construed as an assumption of the obligations of the Lackawanna Company by the Temple Company or a voluntary payment of its debts to the government."

And at pages 662, 663 of 85 F.(2d): "The fact of payment of its proportion of the taxes due by the affiliate seeking credit in the Meyersdale Case, supra, and the recent case of Pioneer Coal & Coke Company v. United States, 14 F.Supp. 661, decided by the Court of Claims on May 4, 1936, upon which the government relies, distinguishes those cases from the Hart Case, supra [Hart Glass Mfg. Co. v. U.S. (Ct.Cl.) 48 F.(2d), 435], in which there was no payment by the subsidiary or agreement between it and the parent company. In the case at bar, there was no payment by the Lackawanna Company or agreement between it and the Temple Company. It was not even an affiliate of the Temple Company. It follows under the principles declared in the above cases, the Commissioner could not take the money paid by the Temple Company and credit it to the Lackawanna Company."

█ Furthermore, an action such as this is one to recover for money had and received, which is governed by equitable principles. In order to recover in such an action, the burden is on the plaintiff to establish that the defendant holds money which in equity and good conscience it is not entitled to retain as against the plaintiff. Therefore, where it appears that a proper recomputation of the tax would show that plaintiff has paid no more than was justly due and owing, he cannot recover the tax paid on the ground that the assessment was not properly made. Champ Spring Co. v. U. S. (C.C.A.) 47 F.(2d) 1, certiorari denied 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459; New York Life Insurance Co. v. Anderson (D.C.) 257 F. 576 (reversed on other points in (C.C.A.) 263 F. 527); Duffin v. Lucas (C.C.A.) 55 F.(2d) 786, certiorari denied 287 U.S. 611, 53 S. Ct. 14, 77 L.Ed. 531; Routzahn v. Petroleum Iron Works (C.C.A.) 56 F.(2d) 938; Hartwell Mills v. Rose (C.C.A.) 61 F.(2d) 441; Howbert v. Norris (C.C.A.) 72 F.(2d) 753.

█ In White v. Stone, 78 F.(2d) 136 (C.C.A. First Circuit), trustees sued to recover the tax paid by them on the income of the trust, which tax they asserted had been erroneously assessed against them, instead of against the beneficiary. It appeared that the trust had been created for the benefit of the widow in lieu of her rights, and that the claim had been made that the income of the trust was not taxable until the amount received was equal to the value of the widow's rights. Because of that contention, the Commissioner taxed the trust income for 1928 against the trustees, of which the widow was one, instead of against the widow alone as beneficiary. Thereafter, it having been decided that the trust income was properly taxable to the widow, the trustees sued to recover the tax upon the income which had been assessed against, and paid by them. The government set up that the taxes which the widow should have paid were in excess of the amount sought to be recovered, and were, moreover, barred by the statute of limitations, so that to permit a recovery would result in the trust income escaping tax for the period. The court held that the government stated a good equitable set-off, that, if the trustees recovered, it would redound to the benefit of the widow as the beneficiary of the trust, and that therefore she was the real plaintiff, and hence there would be no injustice to her in allowing the government such set-off. Judge Morton concurred in that decision, not on the ground of set-off, but on the ground that plaintiffs had not established that the government was withholding money which in justice and equity it ought not to retain.

White v. Stone was followed in First National Bank of Birmingham v. U. S. (D. C.) 12 F.Supp. 301, the facts being similar.

In U. S. ex rel. Girard Trust Co. v. Helvering, 66 App. D.C. 64, 85 F.(2d) 230, the facts were similar to those in White v. Stone, except that in the Girard Trust Case the trustee had paid the tax in lieu of giving bond pending a petition to review the decision of the Board of Tax

Appeals sustaining the Commissioner in assessing the tax against the trustee. After the court decided that the assessment was erroneous because made against the trustee, instead of against the beneficiary, the Commissioner nevertheless refused to refund the tax, whereupon the trustee sued for mandamus to compel the repayment. In its opinion in Girard Trust Co. Case, the court observed that the government and an individual stand in court on equal footing, that nevertheless the granting of mandamus was discretionary, and that it was never granted where to do so would be contrary to equity and good conscience. The court then noted that the case of White v. Stone was identical except for the procedure, and that both were governed by equitable principles, and accordingly denied the mandamus.

In the case at bar, likewise, the proper tax has in fact been paid by the corporations which were properly liable for it, and therefore, on the authority of the above cases, plaintiff is not entitled to recover in this action. Judgment is accordingly directed for the defendant, dismissing the petition on the merits.

The facts contained in the stipulation of facts, agreed upon by the parties, are hereby adopted as the court's findings of fact herein.