**GLOBE PRODUCTS CORPORATION**

v.

**UNITED STATES of America et al.**

**Civ. No. Y–74–842.**

United States District Court,
D. Maryland.

Nov. 26, 1974.

Harry D. Shapiro, Baltimore, Md., for plaintiff.

Richard F. Mitchell, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendants.

JOSEPH H. YOUNG, District Judge.

This is a suit to enjoin the collection of a tax and to quiet title to property of the taxpayer on which the Government is threatening to levy to satisfy the tax. For the reasons discussed below, the injunction sought by plaintiff may not issue, and the Government's motion for summary judgment will be granted.

During the years 1959 through 1962, Globe Products, Inc., (Globe) was one of forty-two wholly-owned subsidiaries of the parent corporation, Premier Corporation of America (Premier). Premier

and its subsidiaries filed consolidated federal tax returns for each of those years pursuant to the Internal Revenue Code of 1954, 26 U.S.C. § 1501 et seq. For the first three years, the consolidated group reported no taxable income, and for the last year it reported a small amount of income. These favorable returns were based on substantial consolidated net operating loss carry-forwards which eliminated most or all of the taxable income of the group.

In 1968 Globe broke away from Premier through a sale of all of the shares of Artistic-Globe (the company which owned all of the stock of Globe) to Paul and Ester Huddles. As part of this agreement, Premier agreed to indemnify the Huddles for all tax deficiencies assessed against Globe which resulted from ·the subsidiary's activities prior to sale.

By the end of 1968, Premier had disposed of all but two of its subsidiaries. Shortly thereafter, Premier became insolvent, as did most of its former subsidiaries. Approximately four corporations of the original consolidated group are still solvent and viable. Globe is one of these.

On February 6, 1970, IRS sent a notice of deficiency to Premier which specifically named Premier and each of its subsidiaries, including Globe, and alleged the existence of additional tax liability for the years 1959 through 1962 in the amount of $5,250,346.98. A statement attached to the notice of deficiency stated that "the deficiencies shown will be assessed severally against each corporation named above in accordance with the Regulations prescribed under section 1502 of the Internal Revenue Code." Plaintiff alleges that only a minor part of this total amount was allocable to its corporate activities during those years.

■ Premier, for itself and as the sole agent of its subsidiaries under 26 C.F.R. § 1.1502–16(a) (1962),[1] filed a

1. Section 1.1502–16(a) (1962) provides: "The common parent corporation shall be for all purposes . . . in respect of the

tax for the taxable year for which a consolidated return is made or is required, the sole agent, duly authorized to act in its own

petition on behalf of the consolidated group in the Tax Court on April 29, 1970 seeking a redetermination of the deficiency. Because Premier was insolvent by this time, it appears that the remaining subsidiaries actually conducted the litigation and negotiations at the Tax Court level. A settlement was reached between Premier and the IRS, and pursuant to a stipulation, the Tax Court entered a decision on August 1, 1972, finding no deficiency for 1959 or 1960, a deficiency of $15,907.56 for 1961 and a deficiency for 1962 of $942,840.23. Globe was bound by this determination.[2] Another result of the Tax Court litigation was a sharing agreement between the remaining viable subsidiaries, in which these corporations, including Globe, agreed to allocate among themselves the liability for any tax deficiency assessed and collected against any or all of them pursuant to the decision of the Tax Court.

On October 2, 1972, an assessment was made by IRS on "Premier Corporation and Subsidiaries." This summary record of assessment did not specifically name Globe nor any other subsidiary. It is this document which is the focus of this litigation. A notice and demand for payment was sent by IRS to Premier at its last known address on the same day. No such notice and demand was forwarded to the plaintiff. On March 19, 1973, IRS determined the Premier account delinquent.

On June 8, 1973, Globe's counsel requested from IRS a copy of a certificate of assessments and payments for 1961 and 1962. After a second request, the certificate, a copy of the assessment certificate issued on October 2, 1972 which failed to name Globe, was furnished on August 8, 1973. No other documents were forwarded to Globe's counsel.

On July 30, 1974, the IRS served a notice and demand for payment on Globe in the amount of $1,714,840.86, the full amount originally assessed against "Premier Corporation and Subsidiaries," plus interest.[3] This document specifically named Globe. Subsequently, IRS served another notice and demand on Globe on August 5, 1974, which provided for seizure of Globe's property if the full amount were not paid within ten days. This demand pursuant to 26 U.S.C. § 6331 effectively put a lien on Globe's property under 26 U.S.C. § 6321. *See* Note, 71 Yale L.J. 1328, 1328–32 (1962).

On August 7, 1974, this Court entered a Temporary Restraining Order preventing collection of the tax or levy on the taxpayer's property by IRS pending a hearing on Globe's application for a preliminary injunction as provided in F.R. Civ.P. 65(b). This order was extended pending a hearing on November 15, 1974, and a ruling thereon. The case is now before the Court on the preliminary injunction and on plaintiff's request to quiet title to its property.

Two other suits, involving five former subsidiaries of Premier, have been filed as a result of the circumstances outlined above. The first suit, ASC Industries v. United States, Civil No. 3–74–765–B, was filed in the United States District Court for the Northern District of Texas. On September 6, 1974, a hearing was held on an application for a preliminary injunction. On September 10, the Honorable Sarah T. Hughes granted a preliminary injunction which remains in effect. The court found jurisdiction, and granted the injunction because "action by . . . Defendants would in all probability immediately result in the ruin and destruction of Plaintiff's business and . . . bankrupt Plaintiff." Judge Hughes' decision was appealed to

---

name in all matters relating to such tax, for each corporation which during any part of such year was a member of the affiliated group." Section 1.1502–16(a) carried that designation at the times relevant to this litigation. The section was redesignated as § 1.1502–16A(a) by TD 6894, approved September 2, 1966.

2. *Id.*

3. Were Globe held liable for the tax here, it would, under 26 C.F.R. § 1.1502–16(a), be liable for the entire deficiency owed by the consolidated group, notwithstanding the fact that it was responsible for only a small portion of the original tax.

the Fifth Circuit on November 8, 1974, and is pending at this time.

The second suit, E. C. Creations, Inc., v. United States, Civil No. 74–3449 (TPG), was filed before Judge Thomas Griesa of the United States District Court for the Southern District of New York, and involves four former subsidiaries of Premier. The issues between the parties in New York are substantially the same as those before this Court. Judge Griesa has held two hearings resulting in rulings which will be discussed below. For the purpose of introduction, however, it is necessary to note a few circumstances of that litigation which distinguish it from the one here. First, a stipulation involving all parties to the New York suit was entered before Judge Stewart of the Southern District of New York in which the Government agreed that it would not levy on the corporations' property while the quiet title suit was pending. Second, the parties are finalizing an agreement under which the corporations will tender letters of credit to IRS which would change the nature of that case to a suit for refund and would therefore avoid the problems discussed below concerning the Anti-Injunction Statute. It is unclear as to whether the plaintiff in this case is in any way involved in that negotiation. Judge Griesa has denied the plaintiff's application for a preliminary injunction, but has held the ruling on the quiet title suit in abeyance. He has also ruled, as discussed below, that a suit for refund is an available remedy for plaintiff to contest its tax liability.

The ruling in this case therefore has repercussions beyond the scope of the instant litigation. The grant or denial of a preliminary injunction would probably not have any collateral effects on other pending litigation. A preliminary injunction by its nature is weighed differently in every case because the degree of harm which the same assessment may do to different corporations will vary with the size, wealth and nature of the corporations involved. Nevertheless, a ruling on the quiet title action may have collateral effects on the New York litigation. The Court does not express an opinion on that issue.

The defendants have argued that the conclusive obstacle to the litigation of this suit and the application for preliminary injunction is section 7421 of the Internal Revenue Code. This Court agrees. That provision states in pertinent part:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom the tax was assessed.

The Supreme Court has recently construed this statute in Bob Jones University v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), Alexander v. "Americans United", Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), and United States v. American Friends Service Committee, —— U.S. ——, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974).

In *Bob Jones*, the Court upheld the traditional judicial exception to the Anti-Injunction Statute created in Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), and stated the applicable test for injunctive relief:

> Only upon proof of the presence of two factors could the literal terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, certainty of success on the merits . . . . An injunction could issue only "if it is clear that under no circumstances could the Government ultimately prevail . . . ." And this determination would be made on the basis of the information available to the Government at the time of suit. "Only if it is then apparent that, under the most liberal view of the law and facts, the United States cannot establish its claim, may the suit for an injunction be maintained."

416 U.S. at 737, 94 S.Ct. at 2046 [citations omitted].

The Court reiterated this test in *"Americans United,"* where it found that a preliminary injunction could be granted only if it were clear that the Government could not in any circumstance prevail on the merits and that equitable jurisdiction existed. 416 U.S. at 758, 94 S.Ct. at 2053. The rationale behind the statute is to prevent the courts from interfering with the process of collection of taxes on which the Government depends for its continued existence. *See* Yates v. White, 152 F.Supp. 320, 321 (S.D.Ill.1957). Because this Court finds that no basis for equitable jurisdiction over the action exists, it need not consider the merits of the plaintiff's claim in construing the second test of probable success on the merits.

## EQUITABLE JURISDICTION

1. *Irreparable injury.* As a basis for irreparable injury, plaintiff has asserted that (1) collection of the tax will destroy its business, (2) a levy upon its property will destroy the plaintiff's credit, thereby destroying its business, and (3) collection of the tax would destroy its good will, which unlike mere monetary losses, could not be regained through an action for refund. *See e. g.,* John M. Hirsch & Co. v. Gentsch, 133 F.2d 247 (6th Cir. 1942); Midwest Haulers v. Brady, 128 F.2d 496 (6th Cir. 1942).

The Court finds that the taxpayer has not sustained its burden of proof as to irreparable injury. At the hearing, the taxpayer conceded that it was party to an agreement among Premier's remaining subsidiaries whereby collection of the tax against any corporation party to the agreement would be apportioned among all subsidiaries party to the agreement. Plaintiff's counsel also admitted that four viable corporations are party to that agreement, including one whose assets far exceed the alleged tax liability in this case.

Therefore, notwithstanding the fact that, as of the last available accounting, the plaintiff's assets of $832,581.40 are exceeded by the tax of $1.7 million owed,

this Court must assume that the harm to plaintiff which would be caused by collection of the tax would be mitigated by apportionment of the payment among the parties to the agreement. Counsel was vague as to the degree to which the agreement would offset its liabilities and asserted that the agreement itself was undergoing litigation in another court. Nevertheless, it is the plaintiff's responsibility to show that it will be irreparably injured by collection of the tax, and, in the absence of proof that the agreement would not prevent destruction of the plaintiff's business, credit, or good will, this Court may not assume that which the plaintiff has failed to prove.

The Court also notes that sound practice of the financial community will take into account the existence of an agreement such as the one between the plaintiff and its co-affiliates. Because such agreements are recognized, plaintiff does not risk loss of credit standing in the interim between assessment of the tax and collection from the other parties to the agreement or the successful outcome of a suit for refund.

Plaintiff also insists that levy of the tax against it would be inherently unfair, since it was responsible for only a small part of the original tax liability. As sympathetic as this Court is to the fact that plaintiff's actual tax liability is greater than that which plaintiff would have accrued had it filed an individual return, the Court must reject this argument. There is no question that, had the Government followed its procedures correctly, this tax could be collected *in toto* from Globe. The Government is not responsible for the fact that plaintiff chose to place itself in a position of potentially excessive tax liability, nor is it responsible for the fact that plaintiff's business would be harmed by collection of the tax. This was plaintiff's informed choice when it decided to take advantage of filing a consolidated return, and a choice the consequences of which it recognized when it broke away from Premier.

2. *Existence of an adequate remedy at law.* Plaintiff has asserted two grounds for lack of an available remedy at law. The first is the existence of 26 U.S.C. § 6512, which prohibits suits for refunds, with certain exceptions, where a taxpayer has previously filed for redetermination of its tax liability in the Tax Court. The Court finds that this case fits squarely within one of those exceptions. The pertinent part of the statute reads:

§ 6512. Limitations in case of petition to Tax Court. (a) Effect of petition to Tax Court.—If the Secretary or his delegate has mailed to the taxpayer a notice of deficiency under section 6212(a) . . . and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year . . . in respect of which the Secretary or his delegate has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except . . . (3) As to any amount collected after the period of limitation upon the making of levy or beginning a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Tax Court which has become final,. as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive.

Plaintiff's case falls squarely within exception (3). Further consideration of plaintiff's argument makes this crystal clear.

26 U.S.C. § 1503(a) provides:

(a) General rule.—In any case in which a consolidated return is made or is required to be made, the tax shall be determined, computed, assessed, collected, and adjusted in accordance with the regulations under section 1502 prescribed before the last day prescribed by law for the filing of such return.

This section of the Internal Revenue Code requires that the merits of this case be governed by the regulations in effect at the dates of filing for the years 1961 and 1962. During those years, 26 C.F.R. § 1.1502–16(a) provided in part:

Except as provided in paragraphs (b) and (c) of this section, the common parent corporation shall be for all purposes . . . in respect of the tax for the taxable year for which consolidated return is made or is required, the sole agent, duly authorized to act in its own name in all matters relating to such tax, for each corporation which during any part of such year was a member of the affiliated group. . . . Notwithstanding the provisions of this paragraph, however, any notice of deficiency, in respect of the tax for a consolidated return period, will name each corporation which was a member of the affiliated group during any part of such period, and *any assessment* (whether of the original tax or of a deficiency) *will be made in the name of each such corporation* (but a failure to include the name of any such corporation will not affect the validity of the notice of deficiency or the assessment as to other corporations); any notice and demand for payment will name each corporation which was a member of the affiliated group during any part of such period (but a failure to include the name of any such corporation will not affect the validity of the notice and demand as to the other corporations); and any levy (or warrant or notice in respect thereof), any notice of a lien, or any other proceeding to collect the amount of any assessment, after the assessment has been made, will name the corporation from which such collection is to be made. The provisions of this paragraph shall apply whether or not a consolidated return is made for any subsequent year, and whether or not one or more subsidiaries have become or have ceased to

be members of the group at any time. . . . [Emphasis added.]

The plaintiff argues that under the provisions of this regulation, a valid assessment of Globe was never made because the certificate of assessment filed by IRS, mailed to Premier, and subsequently mailed to the plaintiff did not "name" Globe specifically. Because the assessment was never made, the plaintiff continues a tax liability never arose and the notice and demand which was subsequently served on the plaintiff was invalid.[4]

■ The defendants' responses to this position are irrelevant at this point. For the purpose of section 6512, it suffices to note that if a valid assessment was not made on Globe within three or six years after the consolidated group return was filed, the three-year or six-year statute of limitations of 26 U.S.C. § 6501(a) or 26 U.S.C. § 6501(e), respectively would have run on assessment and collection of the tax.[5]

If the assessment was never made, as the plaintiff claims, the plaintiff would be permitted to bring an action for a refund, as provided in exception (3) of § 6512, as to all amounts collected from it after the period of limitations had expired on beginning proceedings in court for collection of assessed taxes.[6]

The Court also finds plaintiff's right to a refund action under section 6512 compelling because, although the purpose of section 6512 is to force the taxpayer to elect to litigate all of his claims regarding tax liability for a single year either in Tax Court or in a suit for refund, United States v. Wolf, 238 F.2d 447, 449 (9th Cir. 1956), the basis for the plaintiff's claim in this case arose *after* the entry of the Tax Court's decision. Any "election" of a forum in which to litigate the validity of a tax assessment which occurred after the Tax Court's decision would therefore have been illusory. *But see* United States v. Wolf, 238 F.2d 447, 451 (9th Cir. 1956) (taxpayer could not bring refund action to collect overpayment demonstrable only after, and in consequence of, Tax Court's decision).

As a second ground for lack of an adequate remedy at law, plaintiff cites an old line of cases which prohibited suits for refund where a tax assessment was only technically invalid. Because of the relevance of these cases, it is necessary to discuss them in detail.

In American Newspapers, Inc. v. United States, 20 F.Supp. 385 (S.D.N.Y. 1937), the Commissioner had assessed a parent corporation for the entire tax liability for a consolidated group of corporations within the applicable period of limitations for assessment. The affiliated corporations, which were never assessed, then reimbursed the parent corporation for their individual tax liabilities. The parent corporation sought a refund, alleging that the Government

---

4. It is also possible that even under the broader regulation 26 C.F.R. § 301.6203–1, IRS has failed to meet its procedural duties with regard to notice of assessment. That regulation provides in part:

If the taxpayer requests a copy of the record of assessment, he shall be furnished *a copy of the pertinent parts of the assessment which set forth the name of the taxpayer*, the date of assessment, the character of liability assessed, the taxable period, if applicable, and the amounts assessed. [Emphasis added.]

The record indicates that the only document which plaintiff received in response to its request for the record of assessment was the certificate of assessment which, as noted above, did not specifically name Globe.

5. 26 U.S.C. § 6501 provides in part:

(a) General rule—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

26 U.S.C. § 6501(e) provides a six-year period of limitations in which the Government may assess and/or collect a tax which a taxpayer has omitted from his gross income.

6. Judge Griesa ruled orally at hearing on November 14 that the plaintiff could bring an action for refund.

should have assessed each subsidiary corporation individually. It asserted that it had overpaid its taxes by the amount allocable to the affiliates. The district court did not reach the question of whether an agreement existed among the affiliated corporations as to the manner of assessment. Instead, the court held that where the plaintiff had paid the entire amount of the tax and then charged the affiliates the portion of the tax properly attributable to them and was reimbursed therefor, where the statute of limitations had run on assessment of the affiliates, and where the tax was actually due and owing by the parties who paid it, the tax would not be refunded merely because the assessment had not been properly made. The court stated:

> [A]n action such as this is one to recover for money had and received, which is governed by equitable principles. In order to recover in such an action, the burden is on the plaintiff to establish that the defendant holds money which in equity and good conscience it is not entitled to retain as against the plaintiff. Therefore, where it appears that a proper recomputation of the tax would show that plaintiff has paid no more than was justly due and owing, he cannot recover the tax paid on the ground that the assessment was not properly made.

20 F.Supp. at 393.

The idea that a refund action was based on equitable principles was carried further in Hammermill Securities Corporation v. Noel, 26 F.Supp. 402 (W.D. Va.1938). That case involved a holding company whose only assets were the

stock of its affiliate, a paper company. The officers and counsel for the two corporations were the same. The holding company, with its affiliate, filed a consolidated return showing tax liability which was due solely to the income and profits of the affiliate. An assessment was entered for a deficiency and a notice of deficiency was mailed to the holding company, which paid the entire tax liability with funds of the affiliate under protest that the affiliate, not it, was liable on the tax. The holding company then sued for a refund four days before the statute of limitations for reassessment ran out. The court held that where the incorrect assessment was due to an inconsequential error which was known to, but never corrected by, the taxpayer, where the identity of the two corporations was for most purposes the same, and where the tax was paid by the corporation which actually owed the tax, the fact that the assessment was never made and not entitle the taxpayer to recover where it could not show that the Government should not in equity and good conscience retain the money paid.[7]

Although these cases may seem conclusive of the litigation here, they are distinguishable from the case at bar, which is controlled by an altogether different line of cases. Before illuminating these distinctions, it is necessary to set forth the latter line of cases.

In United States v. C. E. Mathews Inc., 263 F.2d 814 (5th Cir. 1959), the taxpayer claimed a refund pursuant to statute after the statute of limitations for the claim had passed. The Government nevertheless paid the refund. When the Government sued to recover

---

7. *See also*, Meyersdale Fuel Co. v. United States, 44 F.2d 437, 70 Ct.Cl. 765 (1930) in which the Court of Claims stated:

Taxes may be and often are collected without assessment, and this is recognized [by certain sections of the Code], but, in such a case, the tax, if legally due, cannot be recovered merely because it has not been formally assessed.

44 F.2d at 446. *See also* Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937) where the Supreme Court held that where trustees had paid a tax on a trust estate without protest when tax was actually due from the beneficiary, the statute of limitations had passed for assessing the beneficiary, and any refund would be income to the beneficiary and would deprive the Government of a tax to which it was entitled, the suit for refund was equitable in its nature. The Court, therefore, allowed the Government to set off the tax paid by the trustees against the beneficiary.

the refund, the plaintiff asserted the same equitable defense which was raised by the Government in the *Hammermill* and *American Newspapers* cases above: that the Government could not recover money from the taxpayer which in equity and good conscience belonged to the taxpayer in the first place. The Fifth Circuit distinguished those cases, stating that while the statute of limitations was a proper defense, it could not be used as a basis for recovery. The court went on to state that when the Government paid a time-barred refund, that untimely payment was recoverable, just as when a tax-payer paid a time-barred tax. *Cf.* Champ Spring Co. v. United States, 47 F.2d 1 (8th Cir.), cert. denied, 283 U.S. 852, 51 S.Ct. 560, 75 L. Ed. 1459 (1931).

In the case of Brafman v. United States, 384 F.2d 863 (5th Cir. 1967), Judge Wisdom held that the assessment of a deficiency against the transferee of an estate was barred where the assessment certificate which named the estate was not signed by the proper officer. In holding that the tax could not be collected because the assessment was invalid, Judge Wisdom stated:

> We recognize that in sustaining Mrs. Brafman's contention regarding lack of proper assessment within the limitations period we are disposing of this case on what could be termed a "technical defense". As the district court said in United States v. Lehigh, W.D. Ark.1961, 201 F.Supp. 224, 234, this is both true and immaterial: Any procedural defense is in a sense "technical." The procedures set forth in the Internal Revenue Code were prescribed for the protection of both Government and taxpayer. Neglect to comply with those procedures may entail consequences which the neglecting party must be prepared to face, whether such party be the taxpayer or the Government.

384 F.2d at 867–868. *Cf.* Tipton & Kalmback, Inc. v. United States, 480 F. 2d 1118 (10th Cir. 1973) (IRS must use applicable procedures to collect tax rather than ad hoc procedure).

In the *American Newspaper* and *Hammermill* cases the assessments which were made were *not* time-barred; they were merely excessive. In addition, the taxes were paid by the taxpayers who had actually accrued the tax liability. It is important to note in reference to the instant case that *while the parent corporations in those cases were held liable for the full amount of the taxes, it was assumed that since valid assessment had not been made against the affiliated corporations, the assessment and collection of taxes against those affiliates was time-barred.* *See* American Newspapers, Inc. v. United States, 20 F.Supp. 385, 391 (S.D.N.Y.1937); Hammermill Securities Corp. v. Noel, 26 F.Supp. 402, 409 (W.D.Va.1938). *See also,* Carter v. Campbell, 264 F.2d 930, 937 (5th Cir. 1959). In contrast, in *Mathews* and *Brafman,* respectively, a taxpayer who had procured a time-barred refund was forced to disgorge it, and the Government was prevented from collecting a time-barred tax because a valid assessment had never been made. In each of the latter cases, the courts prevented payment without regard to the equities of the situation.

The rule that emerges from these cases is that when a taxpayer is overassessed and the Government collects the entire assessed tax from the taxpayer, the Government may, when equity warrants, retain the excess tax paid and apply it to the tax liability of another taxpayer on whose behalf the contesting taxpayer purportedly paid the tax, *but* the Government or a taxpayer may be prevented from collecting, or may be forced to return, monies procured after the appropriate statute of limitations for assessment or payment has passed, with certain exceptions not appropriate here.

Applying this rule to the facts of the case at bar, it is clear that this case falls within the rationale of *Brafman* and *Mathews.* Although the parent

corporation was assessed, it never paid its own tax liability or the liability of any of its affiliates. The plaintiff alleges in addition that it has never been assessed and that collection of the tax is therefore time-barred. Thus, the case could fall within the rule that where a parent corporation is assessed but assessment of an affiliated subsidiary of the parent is barred by limitation, the taxpayer may successfully bring a suit for refund of the tax collected after the statute of limitations for assessment and collection has run.

The Court holds, therefore, that the plaintiff has an adequate remedy at law, and that, lacking a basis for equitable jurisdiction, 26 U.S.C. § 7421 bars the grant of a preliminary injunction.

## THE QUIET TITLE ACTION

As an alternative to its action for equitable relief, the plaintiff has attempted to state a cause of action on a quiet title theory. This action is designed to circumvent congressional tax policy which operates on a "pay first, litigate later" basis, see Flora v. United States, 362 U.S. 145, 164, 80 S.Ct. 630, 4 L.Ed. 2d 623 (1960) by suggesting that 28 U. S.C. § 2410 is an alternative route to the declaratory relief which the Declaratory Judgment Act, 28 U.S.C. § 2201–2202, specifically bars.

Section 2410 waives the sovereign immunity of the United States where the Government is named as a party in a civil action to quiet title to real or personal property on which the United States "has or claims a mortgage or other lien." The section is not a jurisdictional grant. See Seff v. Machiz, 246 F.Supp. 823, 824 (D.Md.1965). Jurisdiction in this case is said to rest on 28 U.S.C. § 1340, which gives the federal district court subject matter jurisdiction over civil actions arising under "any Act of Congress providing for internal revenue." Since section 1340 does not itself constitute a waiver of sovereign immunity, see Broadwell v. United States, 234 F.Supp. 17, 18 (E.D.N.C.1964), aff'd, 343 F.2d 470 (4th Cir. 1965), the plaintiff, in order to succeed in stating a quiet title cause of action, must show that its suit falls both within the ambit of section 1340 and the requirement of the section 2410 waiver of sovereign immunity.

■ Section 1340 provides a jurisdictional base for the action. See Falik v. United States, 343 F.2d 38, 40 (2d Cir. 1965); United States v. Coson, 286 F.2d 453, 456–458 (9th Cir. 1961). Section 2410, however, is not readily satisfied. The rule in the Fourth Circuit was stated in Broadwell v. United States by the district court:

> In light of the legislative history of Section 2410(a) it is apparent that the consent of the government, given under that section, does not extend to a taxpayer's attack on the merits of a tax assessment through the vehicle of a suit to quiet title.

234 F.Supp. 17, 19.

The plaintiff argues that there is an exception to the *Broadwell* rule as articulated in an earlier Ninth Circuit opinion, United States v. Coson, 286 F.2d 453 (9th Cir. 1961). The plaintiff construes *Coson* to hold that a taxpayer may challenge a tax lien under section 2410 from a "procedural" as opposed to a substantive standpoint, and indeed there is language in *Coson* which suggests that failure to comply with required assessment procedures can be raised in a section 2410 quiet title action. See 286 F.2d at 463.

The plaintiff argues that it falls within the *Coson* exception. Its challenge is not to the validity of the assessment, it argues, but to the fact that the federal Government has failed to comply with its own procedures.

The plaintiff misconstrues the holding in *Coson*.[8] As interpreted by the Second

---

8. The plaintiff relies heavily on the case of Yannicelli v. Nash, 354 F.Supp. 143 (D.N.J. 1973). For this reason the Court feels constrained to say that it does not agree with the interpretation which that case placed upon *Falik, Coson* and Quinn v. Hook, 231 F.Supp. 718 (D.C.Pa.1964), aff'd, 341 F.2d 920 (3d Cir. 1965), and prefers to examine those cases anew.

Circuit in Falik v. United States, 343 F. 2d 38 (2d Cir. 1965), *Coson* did not create an exception to the "pay-now-litigate-later" policy of summary tax assessment insofar as the taxpayer was concerned. *Falik* analyses section 2410 as follows:

> [T]he prime purpose of § 2410(a) as enacted in 1931 . . . was to permit joinder when the lien of the United States was junior to that being foreclosed; in such cases the validity of the Government lien would generally be irrelevant. When the suit was brought by a junior lienor, the statute concededly permitted inquiry into the validity of the lien itself, as distinct from the underlying assessment, through attacks on procedural irregularity . . . on liens filed against property of a person other than the one against whom the tax had been assessed, on Government liens asserted to be prior but contended not to be, and on liens which had in fact been eliminated but not discharged of record. . . .

343 F.2d at 41–42 [citations omitted]. In short, the *Falik* rule has been characterized as limited to section 2410 actions brought by third parties rather than the taxpayer himself. *See* Mulcahy v. United States, 388 F.2d 300, 302 (5th Cir. 1968). *Falik* interprets *Coson* to stand on its facts for the third party rule, and suggests that its rule is the prevailing interpretation. *See* 343 F.2d at 42 n. 7 and 43.

The plaintiff fails to bring itself within the restrictive interpretation of *Coson* made in *Falik* and adopted by this Court. Even if one concedes that the omission which the plaintiff challenges was "procedural," the plaintiff still loses, for *it* is the taxpayer on whom the Government has allegedly levied, not a third party.

 Where the taxpayer itself is concerned, congressional policy is clear. Taxes are to be collected first; challenges to those taxes may then be litigated. Section 2410 has a very curtailed function; it gives parties other than the taxpayer an opportunity to litigate a limited set of questions with regard to government liens on property in which they have an interest. Section 2410 is not, however, designed to permit taxpayers to portage around the summary collection policy long established by Congress, whether their complaints are "procedural" or "substantive." [9]

For the reasons stated above, it is this 26th day of November, 1974, ordered:

1. That plaintiff's application for preliminary injunction be, and the same is, hereby denied;

2. That the defendants' motion for summary judgment be, and the same is, hereby granted.

---

9. The Court suggests that it might be in the plaintiff's interest to intervene in the aforementioned suit pending in the United States District Court for the Southern District of New York. Were the plaintiff to become involved in that suit, and were that suit to proceed as a suit for *refund* for tax payments, the ruling of this Court on the action to quiet title to the plaintiff's property would not have *res judicata* effect on that action.